[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 282 
 OPINION
Respondents, Merickel Holding Corporation and Harold D. Cornell, filed a petition in the office of the state engineer on April 14, 1937, requesting said state engineer to determine the rights in and to the waters of Manse spring and tributaries, pursuant to the water law of Nevada. Thereafter the state engineer entered an order selecting the said stream system for adjudication, and made his order of determination June 8, 1937. On June 12, 1937, said state engineer filed a certified copy of his order of determination in the office of the clerk of the Fifth judicial district court, in and for the county of Nye. On the 15th of June 1937 the court set the time for hearing said matter for July 29, 1937. Appellant, Eddie Barry, within the time fixed by the order for filing contests, regularly filed and served his notice of exceptions to said order of determination. The matter was subsequently heard and submitted to the court for decision. Thereafter the court filed its findings and decision in favor of respondents. A motion for new trial was made and denied, and appellant brings the matter before this court on appeal from the decision and order.
Appellant assigns as error the following:
(a) The court erred in holding that five continuous years of nonuse of water did not constitute a loss of the water right.
(b) The court erred in holding that "intention to abandon" is a necessary element to be proven in determining the question of whether or not a water right is lost or forfeited by five years' continuous nonuse as provided in section 8 of chapter 140, Statutes of 1913, as amended in 1917.
(c) The court erred in holding that a mortgagee of a water right was not bound by section 8 of chapter 140, *Page 284 
Statutes of 1913, as amended in 1917, as to the requirement of beneficial use of water in order to maintain the right.
(d) The court erred in holding that water rights perfected prior to 1913 could not be lost by nonuse, as provided by section 8, chapter 140, Statutes of 1913, as amended in 1917, and that such rights could be lost only by actual intentional abandonment regardless of how long the nonuse continues.
(e) The court erred in holding that Merickel Holding Corporation and Harold D. Cornell had any title whatever to the waters of Manse spring.
(f) The court erred in holding that any title to either water or land passed to Merickel Holding Corporation and Harold D. Cornell by the purported quitclaim deed given by William F. Logan, as administrator of the estate of Jean Cazaurang, deceased, to Merickel Holding Corporation, a California corporation, dated April 8, 1936, and filed for record in Nye County October 8, 1936.
(g) The court erred in holding that the administrator of the estate of Jean Cazaurang, deceased, could execute an effective deed to estate property without an actual sale and confirmation thereof as provided by the laws of Nevada relating to the estates of deceased persons.
(h) The court erred in admitting evidence of use of water by Daniel D. Marron on behalf of Merickel Holding Corporation and Harold D. Cornell after intervening rights were initiated to the waters lost by five years' continuous nonuse.
(i) The court erred in holding that 300.6 acres of land had been irrigated from Manse spring and that said area was entitled to a water right when the original proofs showed only a maximum of 141.4 acres ever had been irrigated.
(j) The court erred in holding that water could be beneficially used for irrigation purposes twelve months in each year and in fixing the irrigation season as twelve months each year. *Page 285 
(k) The court erred in holding that water lost by nonuse or forfeiture could be reestablished without making a new application to the state engineer, as provided by the statute to appropriate the public waters of the state.
Joseph Yount in the year 1877 began the use of the waters of Manse springs, by diversion and application of said waters to beneficial use for irrigation and domestic purposes. From year to year this use was increased, resulting in 1910 with as much as 300 acres of land being under cultivation and irrigated by the said Joseph Yount from the waters of the said Manse springs. Down through the years from 1877 to June 5, 1929, the day of the death of Jean Cazaurang, the successor in interest of said Joseph Yount, all of the waters of the said Manse springs were beneficially used upon the Manse ranch. From June 15, 1929, until September 11, 1936, according to the findings of the trial court, no water was used from said springs for irrigation or cultivation of lands except a small amount to irrigate an orchard and vineyard of a few acres, the water for such purpose being taken from Manse spring No. 2. The court also found that the water from said springs during the years last mentioned formed a swampy area, on which a few head of livestock pastured, and some water was used upon the ranch for domestic purposes by the caretaker placed there by the administrator of the estate of Jean Cazaurang.
Appellant's main contention is that the right to the waters of Manse springs was lost by nonuse as defined by statute, and that said waters were subject to appropriation by appellant. The section of the statute relied on by appellant is section 8 of the water law (sec. 7897 N.C.L. 1929), which reads in part as follows: "And in case the owner or owners of any such ditch, canal or reservoir shall fail to use the water therefrom for beneficial purposes for which right exists during any five successive years, the right to use shall be considered as having been abandoned, and they shall forfeit all water *Page 286 
rights, easements and privileges appurtenant thereto, and the water formerly appropriated by them may be again appropriated for beneficial use, the same as if such ditch, canal or reservoir had never been constructed."
The much greater part of the arguments presented by respective counsel deal with the construction to be placed on said section 8, appellant contending that the five years' nonuse works an absolute forfeiture, respondent answering with the contention that five years' nonuse as defined in the statute does no more than to shift the burden of proof as to the question of abandonment, and that abandonment, as distinguished from forfeiture, still must obtain in order to cause the loss of a water right.
1, 2. We find ourselves in agreement with the argument of appellant that the legislature has declared all water within this state, whether above or beneath the surface of the ground, to belong to the state; that the use of water is authorized by law; and this court has, since the overruling of the riparian doctrine in the case of Jones v. Adams, 19 Nev. 78, 6 P. 442, 3 Am. St. Rep. 788, held that there is no ownership in the corpus of the water, but that the use thereof may be acquired, and the basis of such acquisition is beneficial use. In Walsh v. Wallace, 26 Nev. 299,67 P. 914, 99 Am. St. Rep. 692, it is stated: "To constitute a valid appropriation of water, there must be an actual diversion of it, with intent to apply it to beneficial use, followed by an application to such use in a reasonable time."
3. So we find the doctrine of appropriation the settled law of this state. Reno Smelting Works v. Stevenson, 20 Nev. 269,21 P. 317, 4 L.R.A. 60, 19 Am. St. Rep. 364; Twaddle v. Winters,29 Nev. 88, 85 P. 280, 89 P. 289.
4, 5. Appellant further asserts, and we further agree, that if one voluntarily abandons his right to use water, the water becomes a part of the natural stream or source and again reverts to the state absolutely, without any *Page 287 
title to its use outstanding against the state. Abandoned water is subject to appropriation immediately.
6-11. Water being state property, the state has a right to prescribe how it may be used, and the legislature has stated that the right of use may be obtained in a certain way. The state, having a right to designate the method of appropriation, may also provide how long water may be permitted to run idly by and not be beneficially used. This the state has done, in relation to some rights, by the enactment of section 8 of the water law. In that statute both the words "abandonment" and "forfeiture" are used, and the said terms are entirely different in their operation. This distinction is well set out in Kinney on Irrigation and Water Rights, vol. 2, 2d ed., p. 2020, sec. 1118, as follows:
"Water rights, ditches, and canals, and other works, together with the easements over the lands of others for the same, may be lost by forfeiture. Although the terms `Abandonment' and `forfeiture' are oftentimes used interchangeably, even by the courts, upon the subject of the loss of water rights, and other rights used in connection therewith, there is a decided distinction in their legal significance, and one which, in view of the forfeiture clauses enacted by recent legislation, should be observed. While, upon the one hand, abandonment is the relinquishment of the right by the owner with the intention to forsake and desert it, forfeiture, upon the other hand, is the involuntary or forced loss of the right, caused by the failure of the appropriator or owner to do or perform some act required by the statute. Forfeiture is a `punishment annexed by law to some illegal act or negligence in the owner of lands, tenements, or hereditaments, whereby he loses all his interests therein.'
"The element of intent, therefore, so necessary in the case of an abandonment, is not a necessary element in the case of forfeiture. In fact, a forfeiture may be worked directly against the intent of the owner of the right to continue in the possession and the use of the *Page 288 
right. Therefore forfeiture as applied to water rights and other rights in this connection is the penalty fixed by statute for the failure to do, or the unnecessary delay in doing, certain acts tending toward the consummation of a right within a specified time; or, after the consummation of the right, the failure to use the same for the period specified by the statute."
Also in Wiel on Water Rights in the Western States, 3d ed., vol. I, p. 621, sec. 578:
"As accurate conclusions of the present state of the law as the writer can form are as follows:
"(b) By the introduction of the principle of forfeiture in most States, the foregoing becomes true only for a fixed period (usually from two to five years) after which no intention to abandon is necessary, and non use ipso facto causes loss of right to the extent that it has continued for the period specified to cause forfeiture.
"The correct statement seems to be that the right to water by appropriation is lost in whole or part by non use for an unreasonable time (not exceeding the period fixed by statute for loss of right by non use) prior to the time a controversy arises."
We emphasize the distinction made above because of what we will later say in relation to the manner of losing a water right which had vested prior to the enactment of the 1913 water law, wherein the difference between loss by abandonment and loss by nonuse becomes important.
12. As has been stated, there is nothing to prevent the legislature from enacting that the right to the use of water may be lost and forfeited by five years of continuous nonuse, insofar as rights thereafter acquired are concerned, and, further, in relation to rights acquired prior to such an enactment, providing such prior and vested rights are not thereby impaired.
It is apparent the legislature at the time of its enactment of the 1913 statute was careful to refrain from infringing upon rights which had accrued at that time, so as to avoid any question of the constitutionality of *Page 289 
the act, and as a precautionary measure wrote into the statute section 84, Comp. Laws, sec. 7970, which expressly excluded from the operation of the provisions of the statute any vested rights which would be impaired thereby. Section 84 reads: "Nothing in this act contained shall impair the vested right of any person to the use of water, nor shall the right of any person to take and use water be impaired or affected by any of the provisions of this act where appropriations have been initiated in accordance with law prior to the approval of this act. Any and all appropriations based upon applications and permits now on file in the state engineer's office, shall be perfected in accordance with the laws in force at the time of their filing."
13. We direct our attention at this point to a consideration of the question of whether or not by invoking the provisions of section 8 the rights of respondents to the waters of Manse springs, which admittedly had vested in the predecessors in interest of the respondents long prior to the enactment of said 1913 statute, would be affected or impaired. Of course, if the terms of said section 8 as applied to the waters of Manse springs could in any way affect or impair those rights, said section would not be operative and a construction thereof thereby become unnecessary to a decision in this case. The trial court held that to apply the terms of section 8 would have the effect of impairing rights to the waters of Manse springs which had vested prior to the enactment of the 1913 statute, and therefore said section should be excluded; that rights acquired before 1913 could only be lost in accordance with the law in existence at the time of the enactment of said 1913 statute, namely, intentional abandonment. With this conclusion we agree. Before reaching such conclusion we carefully considered the manner in which the provisions of section 8 could affect or impair the rights in and to the waters of Manse springs which had vested prior to 1913.
The 1913 water law left those who had acquired water *Page 290 
rights prior to its enactment in the enjoyment of said rights, but did undertake to provide means of ascertaining what those rights were, and also set up other methods of control. Such methods have been held by this court to be within the constitutionally delegated authority of the legislature, some of the cases so holding being: Ormsby County v. Kearney, 37 Nev. 314,142 P. 803; Vineyard L. S. Co. v. District Court, 42 Nev. 1,171 P. 166; Pitt v. Scrugham, 44 Nev. 418, 195 P. 1101.
14. So the simple question here is: Can a right be impaired by providing a different method for its loss than had theretofore existed? We think it will be conceded that loss by forfeiture presents a much stricter and more absolute procedure than loss by abandonment. Prior to 1913 the law said that the water users of that day would have and hold the use of such water until the same should be abandoned, and, as we have seen, in abandonment the intent of the water user is controlling. To substitute and enlarge upon that by saying that the water user shall lose the water by failure to use it for a period of five years, irrespective of the intent, certainly takes away much of the stability and security of the right to the continued use of such water. We do not wish to be understood as holding that because a person may have established a water right prior to 1913, such acquisition insures him in the right to the use of such water indefinitely, without regard to placing it to beneficial use. We do find that such rights have been left in a condition where courts must determine the intent of the claimant, and in determining such intent, as to whether abandonment has taken place, may take such nonuse and other circumstances into consideration, and have the right to and will check a continued wanton and willful waste of water. Courts appreciate the necessity of requiring that water be beneficially used, because of its importance to the agricultural industry of the state. They will, however, take into consideration the circumstances of the particular case, and will *Page 291 
not cause to be forfeited or taken away valuable rights when the nonuse of water was occasioned by justifiable causes. Especially in this true of rights which became vested prior to 1913. The trial court had this idea clearly in mind in making its findings. We fail to see any evidence in this case of a "dog-in-the-manger policy," which appellant fears will result if the decision in this case is affirmed.
15. The State of Wyoming has a statute almost identical with section 8 of the Nevada law. Yet, in applying the provisions of their statute the Wyoming courts have refused to take away rights because of nonuse where circumstances were such as to prevent the beneficial use. Morris v. Bean, C.C., 146 F. 423; Ramsay v. Gottsche, 51 Wyo. 516, 69 P.2d 535; Horse Creek Conservation District v. Lincoln Land Co., 54 Wyo. 320, 92 P.2d 572; Scherck v. Nichols, 55 Wyo. 4, 95 P.2d 74. It would seem that circumstances preventing a loss because of nonuse should be much stronger where section 8 applies than in cases where it does not.
16. The trial court, from the evidence presented, found that there was no abandonment of the waters of Manse springs. There is substantial evidence in the record upon which to base such a finding, and for that reason we are not disposed to disturb it.
17. Appellant challenges the title of respondents to the Manse ranch and the water right appertaining thereto, basing his contention upon the fact that the provisions of the statute relative to a sale by an estate were not complied with. The land was transferred to the respondent Merickel Holding Corporation by an order of the court pursuant to a compromise settlement under the provisions of section 9771 N.C.L. The court had jurisdiction to make such a compromise settlement, and having jurisdiction so to do, appellant, being a stranger to the title and having no rights under the estate, is in no position to question the regularity of *Page 292 
those proceedings. Whether or not it was just and equitable would be for those claiming under the estate.
As has been hereinbefore stated, the view we take of the provisions of section 84 as applied to the facts in this case render it unnecessary to determine several additional points which appellant has urged in connection with his theory that section 8 of the water law is controlling in this case.
The judgment and order appealed from are affirmed.