**The UNITED STATES of America, Plaintiff,**

v.

**ALPINE LAND AND RESERVOIR CO., et al., Defendants.**

**No. CIV. D–184–HDM.**

United States District Court, D. Nevada.

Sept. 3, 1998.

Kathryn Landreth, United States Attorney, Shirley Smith, Asst. U.S. Attorney, Reno, NV, Lois J. Schiffer, Asst. Attorney General, Fred R. Disheroon, Special Litigation Counsel, Environment & Natural Resources Div., Washington, D.C., Stephen M. Macfarlane, Trial Attorney, Environment & Natural Resources Division, Sacramento, CA, for U.S.A.

**1234**

R. Michael Turnipseed, P.E., Nevada State Engineer, Division of Water Resources, Carson City, for State of Nevada.

Frankie Sue Del Papa, Attorney General, David C. Creekman & Marta Adams, Deputy Attorney General, Carson City, for Nevada State Engineer.

Garry D. Stone, United States Water Master, Reno.Michael J. Van Zandt, Craig A. Pridgen, McQuaid, Metzler, McCormick & Van Zandt, San Francisco, CA, for Water Transfer Applicants.

Robert S. Pelcyger, M. Evelyn Woods, Fredericks, Pelcyger, Hester & White, LLC, Louisville, CO, Robert D. Stitser, Reno, NV, for Pyramid Lake Paiute Tribe of Indians.

Laura. Schroeder, Schroeder Law Offices, Portland, OR, for Transfer Applicant # 48865 Rambling River Ranches Inc.

Dale E. Ferguson, Gordon DePaoli, Woodburn and Wedge, Reno, NV, for Matley–Venturacci Group.

Michael F. Mackedon, Steven D. King, Mackedon & McCormick, A Professional Corp., Fallon, NV, for Roger Mills, Larry Fritz, and Gaylord Blue Equity Trust.

Ross E. de Lipkau, Hill, Cassas, deLipkau & Erwin, Reno, NV, for Aquaduct I. & Town of Fernley.

Roger A. Bergmann, Reno, NV, for Federal Water Master Gary Stone.

Steve McFarlane, U.S. Dept. of Justice, Environment and Natural Resources Div., Sacramento, CA, for Truckeecarson Irrigation Dist. & Class Defendants.

Peter G. Morros, State Engineer, Division of Water Resources, Dept. of Conservation and Natural Resources, Carson City, NV, Lyman McConnell, Newlands Project, Fallon, NV, for Truckee Carson Irrigation District.

Sid Ottem, Office of the Solicitor, Pacific–Southwest Region, U.S. Dept. of the Interior, Sacramento, CA, George N. Benesch, Deputy Attorney General, Division of Water Resources, Carson City, NV.

ORDER

McKIBBEN, District Judge.

On December 22, 1997, the Nevada State Engineer issued its Ruling On Remand # 4591. The United States and the Pyramid Lake Paiute Tribe ("Tribe") appeal that ruling.

The history of this litigation is detailed in *United States v. Alpine Land & Reservoir Co.*, 503 F.Supp. 877 (D.Nev.1980), aff'd. as modified, 697 F.2d 851 (9th Cir.1983) ("Alpine I"), *United States v. Alpine Land & Reservoir Co.*, 878 F.2d 1217 (9th Cir.1989)("Alpine II")and *United States v. Alpine Land & Reservoir Co.*, 983 F.2d 1487 (9th Cir.1992) ("Alpine III"). In *Alpine III*, the Ninth Circuit remanded this action to the district court to make the following determinations, on a parcel-by-parcel basis, with respect to each transfer application at issue: (1) whether the water rights appurtenant to the transferor properties at issue have been perfected; (2) whether the holders of the water rights sought to be transferred abandoned the water rights appurtenant to the transferor properties; and (3) whether the specific water rights sought to be transferred have been forfeited, if the specific water rights vested or were initiated after March 22, 1913. The Ninth Circuit left it to this court's discretion whether to conduct the factual determinations itself or to appoint the State Engineer or a federal Water Master.

On April 13, 1995, this court issued the following order:

This action is remanded forthwith to the Nevada State Engineer to consider all applications and make determinations on the issues of perfection, abandonment and forfeiture. Should the State Engineer decide additional evidence is required, he shall afford the parties the opportunity to present such evidence. The State Engineer shall then certify the record to this court to decide whether or not the findings of the State Engineer are based on the relevant facts and applicable law.

Thereafter, the Engineer issued a briefing schedule and a timetable for the exchange of evidentiary materials between the parties. On August 30, 1996, the Engineer issued

Interim Ruling No. 4411, in which the Engineer concluded: 1) the Tribe was not precluded by the doctrine of res judicata from being heard on the issues of lack of perfection, abandonment and forfeiture; 2) the Engineer had the authority to consider the issues of lack of perfection, abandonment and forfeiture; 3) the Engineer would act on the applications before him as ordered by the court; 4) Nevada law does not shift the burden of proving lack of abandonment to the applicants upon the protestant's showing of an extended period of nonuse; and 5) NRS § 533.324, which became effective subsequent to the decision in *Alpine III*, precluded the need for perfection of the water rights that are the subject of the transfer applications prior to the transfer of said rights.

On September 23, 1996, the Tribe filed a motion for partial reconsideration regarding the Engineer's ruling on perfection. In Ruling # 4591, the Engineer affirmed his conclusion that the court in *Alpine II* misinterpreted Nevada law when it held that all water rights in Nevada must be perfected prior to transfer. However, the Engineer further concluded that all unperfected water rights are not available to be transferred. The Engineer determined that if the Tribe proves a water right was not perfected prior to the filing of one of the transfer applications, the issue becomes whether that particular water right is still within the diligence phase of development. If the answer is yes, the unperfected water right can be moved; however, if the water right is not within the diligence phase, the unperfected water right is not available for the transfer, as it does not comport with the common law doctrines of due diligence and relation back.

Evidentiary hearings were held in 1996 and 1997. On December 22, 1997, the Engineer issued its Ruling on Remand # 4591, which considered fourteen (14) applications, consisting of fifty-six (56) transferor parcels.[1] In addition to the Engineer's factual findings on a parcel-by-parcel basis, the ruling consisted of twelve (12) general findings of fact and four (4) general conclusions of law. Where applicable, the Engineer adopted and incorporated these general findings and conclusions when considering the issues of perfection, abandonment and forfeiture on a parcel-by-parcel basis.

Specifically, the Engineer determined that for thirty-eight (38) parcels, no water had been applied to beneficial use for periods ranging from five (5) years to thirty-six (36) years prior to the filing of the application to transfer the water right. For eight (8) other parcels, the Engineer found that the Tribe had proved that some portion of the land had not been irrigated for a substantial number of years, but that the Tribe had failed to present evidence of the exact location of the unirrigated land. On the remaining parcels, the Engineer found the Tribe had failed to prove nonuse of the water by clear and convincing evidence.

The Engineer also made findings regarding the land use of the transferor parcels. For a majority of the thirty-eight (38) existing places of use where the Engineer found

---

1. The Tribe's original appeal to federal court included Group 1 consisting of 58 applications; Group 2 consisting of 44 applications; and Group 3 consisting of 27 applications (129 total). In *Alpine II*, the Ninth Circuit held that the Tribe was precluded from challenging the forfeiture and abandonment of 104 of the applications because it failed to protest these before the Engineer. The 27 applications in Group 3 became the "original 25" after excluding Applications 47822 and 47830, which were not protested on the grounds at issue. The "original 25" applications were protested on the grounds of perfection, abandonment and forfeiture. Several permits granted or protests filed on the original 25 are no longer in existence. Permit 48422 was canceled by the Engineer and no timely appeal was taken. The Tribe withdrew its protests to Applications 48767 and 48866. Water appli-cants withdrew permits 48470, 48471, 48665 and 48827. Pursuant to a motion to consolidate Group 3 applications with Group 7, the Engineer held applications 47809, 48465, 48466, and 48669 aside to be heard later with the Group 7 applications. Thus, the Engineer's findings on 14 out of the original 25 applications are currently before the court.

The fourteen applications under consideration in Ruling # 4591 are: 47840(Mills), parcels 1–21, 48468 (Fritz), parcels 1–6; 48668 (Gaylord), parcel 1; 48828 (Inglis), parcel 1; 48647 (Whitehead), parcel 1–2; 48672 (Lohse), parcel 1–2; 48673 (Payne), parcels 1; 48424 (Dalton), parcel 1; 48666 (Craig), parcels 1–4; 48667 (Edson), parcels 1, 2, 5 & 7; 48825 (Emery), parcel 1; 48467 (Gerdamann), parcels 1–2; 48423 (Hoeksema), parcels 1–3; 48865 (Rambling River), parcels 1–7.

no water had been applied to beneficial use and the eight (8) parcels where the Engineer found partial nonuse, the Engineer determined that the evidence before him clearly showed that they were comprised of paved highways and roads, natural vegetation, bare land, residential areas and canals and drains.

With respect to the issues of perfection, forfeiture and abandonment, the Engineer found that the water right on one (1) parcel had not been perfected, the water rights on two (2) parcels could not be transferred, and that no water rights sought to be transferred had been abandoned or forfeited. The three parcels which the Engineer concluded could not be transferred belong to Application 47840 (Mills), parcels 5, 11 and 12. As to parcel 5, the Engineer stated "the water right was never perfected on this parcel from the time of the contract in 1951 through the filing of the change application in 1984, a period of 33 years. The State Engineer further finds in the absence of evidence to the contrary a lapse of 33 years does not demonstrate due diligence in placing the water to beneficial use; therefore, there is no water right that can be related back under the doctrine of relation back and there is no water right available to be transferred from this parcel." With respect to parcels 11 and 12, the Engineer could not determine what the contract dates were. The Engineer concluded, therefore, that there was insufficient information to determine the Tribe's claims of lack of perfection, forfeiture or abandonment or to allow the transfer of the water rights.

2. The applicants' contention that the United States lacks standing to appeal Ruling # 4591 is without merit.

3. The United States specifically contends that the water rights sought to be transferred in the following applications are abandoned and/or forfeited, in whole or in part, and, therefore, ineligible for transfer:

 47840 (Mills)——parcels 1–20 (except parcels, 5, 11 and 12 already invalidated)

 48468 (Fritz)——parcels 1–6

 48668 (Gaylord)——parcel 1

 48647 (Whitehead)——parcels 1 and 2

 48672 (Lohse)——parcel 2

 48666 (Craig)——parcels 1–4

 48667 (Edson)——parcel 7

On January 16, 1998, the United States filed its Petition for Review and Notice of Appeal of Ruling # 4591.[2] The United States specifically objects to the following general findings of fact and general conclusions of law: (1) General Finding of Fact I; (2) General Finding of Fact IX; (3) General Finding of Fact XII; (4) General Conclusion of Law II; and (5) General Conclusion of Law IV. In addition, the government contends that based on the Engineer's uncontroverted findings regarding the nonuse of water for a substantial period of time, combined with uncontroverted findings of a land use inconsistent with irrigation, more than half of the water rights at issue have been forfeited or abandoned.[3]

On January 14, 1998, the Tribe filed its Notice of Appeal of Ruling # 4591. The Tribe appeals on the following grounds: (1) the Engineer should not act as a fact-finder on remand[4]; (2) the Engineer failed to apply the doctrine of beneficial use; (3) the Tribe was denied the discovery tools necessary to obtain important evidence; (4) General Conclusion of Law IV; (5) the rebuttable presumption of intent to abandon should have been applied; (6) General Finding of Fact XI; (7) General Finding of Fact X; and (8) certain factual findings regarding specific parcels.

No water right applicant has filed an appeal of Ruling # 4591. Specifically, no applicant has contested the Engineer's factual findings with respect to nonuse of water or the land use for the transferor properties.

 48467 (Gerdamann/Rebol)——parcels 1 and 2

 48423 (Hoeksema/Cook)——parcel 1

The United States made no objections to the following transfer applications: 47840 (Mills), parcel 21; 48828 (Inglis); 48672 (Lohse), parcel 1; 48673 (Payne); 48424 (Dalton); 48667 (Edson), parcels 1, 2 & 5; 48825 (Emery); 48423(Hoeksema), parcels 2 & 3, and 48865 (Rambling River).

4. On appeal, the Tribe has once again moved to disqualify the State Engineer on grounds of bias. After reviewing Ruling # 4591, however, the court believes the Engineer made the factual determinations in both an unbiased and commendable manner. The Engineer will remain as factfinder for all pending transfer applications.

### DISCUSSION

On remand, the district court "must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Firth v. United States,* 554 F.2d 990, 993 (9th Cir.1977). The law of the case doctrine provides that "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *U.S. v. Alexander,* 106 F.3d 874, 876 (9th Cir.1997). However, a court may have discretion to depart from the law of the case if: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. *Id.* A court's "[f]ailure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id.*

This court entered an order of remand to the State Engineer for determinations on the issues of perfection, abandonment and forfeiture, which were to be based on relevant facts and applicable law. The Engineer is bound by the mandate set forth in *Alpine III* and the law of the case doctrine.

The Engineer's interpretation of the law set forth in *Alpine III* and any new questions of law will be reviewed *de novo*. *Town of Eureka v. State Engineer,* 108 Nev. 163, 165, 826 P.2d 948 (1992). The Engineer's factual findings, however, "shall be prima facie correct, and the burden of proof shall be upon the party attacking the same." Alpine Decree, Administrative Provisions ¶ 7; NRS § 533.450(9). On issues of fact, the reviewing court must limit itself to a determination of whether substantial evidence in the record supports the Engineer's decision.

*Town of Eureka,* 108 Nev. at 165, 826 P.2d 948.[5]

### I. Specific Objections to the Engineer's Factual Findings

In addition to its objections to the Engineer's legal conclusions on the issues of forfeiture and abandonment, the Tribe contests certain factual findings by the Engineer.

For eight (8) parcels, the Tribe submitted evidence that only a portion of the existing place of use had been irrigated.[6] The applications are: 48672 (Lohse), parcel 1; 48673 (Payne), parcel 1; 48825 (Emery), parcel 1 and 48865 (Rambling River), parcels 1–5. Generally, partial nonuse results in partial abandonment or partial forfeiture. *State v. Hagerman Water Right Owners,* 130 Idaho 727, 947 P.2d 400, 408 (Id.1997).

However, on each of the parcels, the Engineer ruled that the Tribe had failed to provide clear and convincing evidence of the specific location of the unirrigated land. For example, on the issue of forfeiture on Application 48673 (Payne), parcel 1, the Engineer ruled:

> However, the State Engineer finds there is not clear and convincing evidence as to the exact location or the quantity of acres in the 3.2 acre portion of the parcel the protestant alleges were not irrigated from 1962 through 1984. Based on this lack of evidence of specific location of lands where non-use was alleged and the fact that the amount of land changed over time, the Protestant did not provide clear and convincing evidence as to the non-use on a specific portion of the 3.2 acres....

The Tribe contends the Engineer had a "statutory obligation to develop a full and complete record," and that the Engineer should have asked the Tribe or its witnesses

---

5. The court finds no authority for the appellants' contention that the Engineer's factual findings should be reviewed *de novo*.

6. The government does not join in the appeal of these factual findings. However, there is a 9th parcel in which the Tribe submitted evidence that only a portion of the parcel had been irrigated-Application 48468 (Fritz), parcel 3. The Engineer found that from 1953 through 1972, the

Tribe did not provide clear and convincing evidence as to non-use on any particular portion of the parcel. However, the Engineer also found that from 1973 through 1984, no water was placed to beneficial use on this parcel. Therefore, the government has also objected to the Engineer's determinations on this parcel, based on the latter part of the ruling. This objection is discussed below.

to provide information regarding the exact location of the nonuse of the water. However, the burden was on the Tribe, not the Engineer, to present proof of nonuse.

The Engineer's conclusion that there is no clear and convincing evidence of nonuse on any specific portion of the disputed transferor parcels is supported by substantial evidence. Accordingly, the Engineer's findings as to Applications 48672 (Lohse), parcel 1; 48673 (Payne), parcel 1; 48825 (Emery), parcel 1; and 48865 (Rambling River), parcels 1–5 are affirmed.

The Tribe also objects to the Engineer's factual findings on Application 48667 (Edson), parcel 1. With respect to forfeiture on that parcel, the Tribe's expert witness testified that the land was "bare land, trees" in 1962 and 1972, "bare land" in 1973 through 1975 and 1977, and "farm yard, structures" in 1980 and 1984. At the 1985 hearing, the applicant described the land use as housing. The Engineer gave greater weight to the applicant's description. The Engineer concluded, however, that the Tribe did not prove forfeiture or abandonment.

The Tribe is correct in its contention that whether the Engineer accepted the Tribe's or the applicant's land use description, there was no evidence of use of the water right to counter the Tribe's evidence of nonuse; that is, land that is occupied by housing cannot be irrigated. Based on this evidence, the Engineer erred in concluding that the Tribe failed to prove nonuse for the statutory period.

## II. *Perfection*

In *Alpine III*, the court remanded for a determination of whether the water rights appurtenant to the transferor properties have been perfected. *Alpine III*, 983 F.2d at 1495.

The law of Nevada, in common with most other Western States, requires that for the perfection of a water right for agricultur-

al purposes, the water must be beneficially used by actual application on the land, and the only transferable water right is one that has been appropriated to a beneficial use. *Nevada v. US*, 463 U.S. at 126, 103 S.Ct. 2906; *Alpine II*, 878 F.2d at 1226.[7]

"To constitute a valid appropriation of water, there must be an actual diversion of it, with intent to apply to beneficial use, followed by an application to such use within a reasonable time." *In re Manse Spring*, 60 Nev. 280, 286, 108 P.2d 311 (1940); NRS § 533.035; NRS § 533.070. "The nature of a water right is such that it takes time to perfect the right; when any work is necessary to complete the appropriation, the law gives a claimant a reasonable time to do it, and the appropriation is not deemed complete until the actual diversion or use of water." *Alpine I*, 503 F.Supp. at 885. In cases where beneficial use may be made of the water without diverting it, beneficial use alone is sufficient to constitute appropriation. *Nevada v. Morros*, 104 Nev. 709, 714, 766 P.2d 263 (1988).

The Tribe protested twenty-seven (27) parcels on the grounds of lack of perfection. The Engineer concluded that all but three parcels had been perfected on one or more of the following grounds: (1) a water right obtained pursuant to a contract dated prior to 1927 was perfected as a matter of law (General Conclusion of Law II)(20 parcels); (2) a water right was a pre-statutory vested right (General Finding of Fact XI) (7 parcels); and (3) the Tribe failed to provide sufficient evidence to prove lack of perfection (all parcels except 5, 11 & 12 of Application 47840).

Neither the Tribe nor the government contends that the Engineer erred in his factual determinations regarding lack of perfection. The United States objects only to General Conclusion of Law II, wherein the Engineer found "that the evidence supports the conclusion that for lands which have a water right

---

7. In *Alpine III*, the court rejected the Engineer's argument that, under Nevada law, a water right need not be perfected prior to being transferred. *Alpine III*, 983 F.2d at 1492. In General Conclusion of Law III, the Engineer determined that the court had misinterpreted Nevada law. The Engineer based his conclusion on NRS § 533.324, which became effective subsequent to the decision in *Alpine III*. Because the appellants have not directly appealed this ruling and it has no direct bearing on the fourteen applications, the court will defer consideration of this issue until it bears on the issue raised by the facts of a transfer application.

contract dated pre–1927 at some point in time prior to the date of the contract the water right was perfected." (Ruling at 41).

During the administrative hearings conducted in 1985 and 1997, the Engineer received documentary and testimonial evidence that the Bureau of Reclamation's practice while operating the Project from 1902 through 1926 was to require water right applicants to develop their land and put it into production, prior to the Bureau determining irrigability and awarding a water right contract. Based on this evidence, the Engineer concluded that water rights under contracts issued prior to 1926 were necessarily perfected by beneficial application for irrigation prior to the time the contract was issued.[8]

The United States contends that the Engineer's conclusion is not supported by substantial evidence. However, this conclusion does not affect the Engineer's factual finding that the Tribe failed to prove by clear and convincing evidence lack of perfection on twenty-four (24) of the transferor parcels (which the government does not protest). Accordingly, the court will reserve ruling on this issue until such time as it has a direct bearing on the Engineer's findings relative to perfection on specific transfer applications.

### III. *Forfeiture*

On the issue of forfeiture, the court in *Alpine III* remanded the case for a determination of whether the specific water rights sought to be transferred have been forfeited, if the specific water rights vested or were initiated after March 22, 1913. *Alpine III*, 983 F.2d at 1495.

 Under Nevada law, "the only requirement to prove forfeiture of water rights is to show a failure to use the water beneficially for five successive years." *Alpine III*, 983 F.2d at 1494; NRS § 533.060(2). Forfeiture thus differs from common law abandonment because an intent to relinquish a right is not a requirement. *In re Manse Spring*, 60 Nev. at 287, 108 P.2d 311. Because the law disfavors forfeiture, the protestant "bears the burden of proving, by clear and

convincing evidence, a statutory period of nonuse." *Town of Eureka v. Office of State Engineer*, 108 Nev. 163, 169, 826 P.2d 948 (1992).

However, not all water rights are subject to forfeiture under Nevada law. NRS § 533.085, provides, in pertinent part:

> Nothing contained in this chapter shall impair the vested right of any person to the use of water, nor shall the right of any person to take and use water be impaired or affected by any of the provisions of this chapter where appropriations have been initiated in accordance with law prior to March 22, 1913.

Accordingly, in order to determine whether a right may have been forfeited, the Engineer must first determine whether and when the right vested and under which law appropriation was initiated. *Alpine III*, 983 F.2d at 1495. If the right vested before March 22, 1913, or if the appropriation of the right was initiated in accordance with the law in effect prior to that date, then it is not subject to possible forfeiture under NRS § 533.060.

The Tribe protested 40 out of the 56 parcels on the grounds of forfeiture. The Engineer determined that none of transferors had forfeited their water rights on one or more of the following grounds: (1) all water rights in the Project were initiated in 1902 and, therefore, not subject to the forfeiture provisions of NRS § 533.060 (General Conclusion of Law IV) (all parcels); (2) the contract is dated prior to March 22, 1913 and, therefore, not subject to Nevada's forfeiture provisions (22 parcels); (3) the right was a pre-project vested right, which is not subject to Nevada's forfeiture provisions (11 parcels); and (4) no clear and convincing evidence of nonuse for the statutory period (14 parcels).

 The Tribe and the United States appeal only the Engineer's General Conclusion of Law IV. The Engineer relied solely on this conclusion to find lack of forfeiture for the following eight (8) parcels: Applications 47840(Mills), parcels 1 & 13; 48468 (Fritz), parcels 1–3 & 6; 48668 (Gaylord), parcel 1; and 48647 (Whitehead), parcel 1.[9]

---

8. There was no evidence that TCID followed the policy after it took over the operation in 1927.

9. The government contends the Engineer also relied solely on General Conclusion of Law IV

In General Conclusion of Law IV, the Engineer stated that "all water rights requested for transfer pursuant to these transfer applications are changes of the 1902 water right decreed to the United States and all rights emanating therefrom were initiated in accordance with the law in effect prior to March 22, 1913. Therefore, the State Engineer finds the water rights are not subject to the forfeiture provisions of Nevada Revised Statute § 533.060." (Ruling at 49). The Engineer made no determinations as to when each individual landowner took the first step to appropriate the water appurtenant to his land.

The Engineer contends that when a right was initiated (its priority date), depends upon when the "first step" to appropriate the water was taken and is a matter of Nevada law. The Orr Ditch Decree held that the water for the Project has a priority date of July 2, 1902. The Engineer thus concluded that regardless of whether the water belongs to the farmers or to the United States, the first step taken to appropriate the water was on July 2, 1902. "Therefore, by that definition alone the water right for all Project users was initiated in accordance with the law in effect prior to March 22, 1913." (Ruling at 47).

The Engineer further concludes that while *Alpine III*'s distinction between the water right obtained by the United States for the Project and the water rights appurtenant to particular tracts of land proved important as to when the water rights vested, "this distinction has no importance as to the priority date of water rights in the Truckee Division of the Newlands Project because of the relation back doctrine." (Ruling at 47). The Engineer concluded that the United States appropriated and was decreed a 1902 water right for use on the entire Project and every single water right on the Project at issue was obtained pursuant to a contract with either the Bureau of Reclamation or TCID and uses the United States' 1902 decreed appropriation. Therefore, all of the Project farmers

share proportionally in shortages during any water shortage year.

The interpretation of the term "initiated" is not in dispute. Clearly, NRS § 533.085 was intended to cover situations where steps had been taken to establish a water right in accordance with the law in effect prior to 1913, but the right had not yet been perfected. Once perfected, the right relates back to the first step taken to secure that right.

On the issue of forfeiture, the court in *Alpine III* only rejected the Engineer's argument that the water rights in the Project vested in 1902, when the United States obtained the water rights for the Project. In *Alpine III*, however, the court drew a distinction between the rights obtained by the United States and the rights appurtenant to particular tracts of land. That analysis is relevant to the interpretation of NRS § 533.085. In *Alpine III*, the court stated:

> The district court erred by assuming that all the water rights in question vested when the United States obtained water rights for the Project in 1902. This amalgamation of water rights, obtained by the United States for the entire Project, is *not the relevant set of rights*. Instead, the rights at issue are the rights appurtenant to particular tracts of land that are the subject of the twenty-five contested transfer applications.
>
> . . . .
>
> "The rights acquired by the farmers in the Project from the United States were more akin to newly appropriated water rights than to the rights such as those in Manse Spring that had remained appurtenant to a particular tract of land and had been passed with the land. In obtaining water rights from the United States, the Project farmers were really in the same position as farmers appropriating water from its source." *Id.* at 1496. (emphasis added)

In making this distinction, the court looked to the purpose of the forfeiture statute. The Nevada Legislature included the provision exempting pre–1913 rights from impairment

---

for Application 48467 (Gerdamann), parcel 1. In addition to relying on this conclusion, however, the Engineer determined that this water right was a pre-Project vested water right not subject

to the forfeiture provisions. The government does not appeal that finding. Accordingly, this water right is not subject to forfeiture.

"to refrain from infringing upon rights which had accrued at that time, so as to avoid any question of the constitutionality of the act." *In re Manse Spring,* 60 Nev. at 288, 108 P.2d 311. The *Alpine III* court concluded that "with the purpose of the statute in mind, it would not make sense to grant to every farmer a Project water right with a 1902 vesting date regardless of when the farmer actually obtained the right to irrigate his land." 983 F.2d at 1495.

Under the constraints of *Alpine III* (which this court is bound to apply), the Engineer's conclusion that all of the individual landowners' rights were initiated in 1902 is erroneous. Accordingly, the Engineer should have made a determination as to when the individual landowner took the "first steps" to appropriate the water appurtenant to his land, and not rely on the 1902 priority date. The failure to do so was an abuse of discretion. *Western Systems, Inc. v. Ulloa,* 958 F.2d 864, 866 (9th Cir.1992).

The following applications should be remanded to the State Engineer to make a determination as to when the transferor or his predecessor took the "first step," independent of the 1902 priority date, to appropriate the water appurtenant to his land: 47840(Mills), parcels 1 & 13; 48468 (Fritz), parcels 1–3 & 6; 48668 (Gaylord), parcel 1; and 48647 (Whitehead), parcel 1. If there is any evidence that the individual landowner took any step to appropriate the water in accordance with the law in effect prior to March 22, 1913, the court will apply the relation back doctrine and the water right will not be subject to forfeiture. If, however, the appropriation of the right was initiated subsequent to that date, the water right will be deemed forfeited. In the absence of any evidence of individual steps taken prior to March 22, 1913 to appropriate the water, the Engineer must use the date of the contract as the date the water right was initiated.

While this court is bound by the holdings in *Alpine III,* the court would observe that it agrees with the Engineer that there is only one set of rights on the Project. Every water right which derives from the Project was initiated by the actions of the United States beginning in 1902, when it posted notice that it was acquiring the water rights within the Lahontan Valley. As part of the initial act of appropriating the water, the United States agreed that it would enter into contracts with landowners, whereby the individuals could obtain water rights from the Project, provided that the water was put to a beneficial use. The appropriation initiated was completed when the stored water was put to beneficial use on lands owned by the Project farmers. As to Project water, therefore, the court believes that under the relation back doctrine, the 1902 priority date should be controlling on the issue of forfeiture. While the court must apply the law as set forth in Alpine III, the court respectfully urges that the court of appeals revisit this issue.

## IV. *Abandonment*

The court in *Alpine III* also remanded for a determination of whether the holder of the water rights sought to be transferred abandoned the water rights appurtenant to transferor properties. *Alpine III,* 983 F.2d at 1495.

Under Nevada common law, abandonment of a water right "is the relinquishment of the right by the owner with the intention to forsake and desert it." *In re Manse Spring,* 60 Nev. at 287, 108 P.2d 311. "Abandonment, requiring a union of acts and intent is a question of fact to be determined from all the surrounding circumstances." *Revert v. Ray,* 95 Nev. 782, 786, 603 P.2d 262 (1979). Intent to abandon a water right may be inferred from the acts of the water right holder. *Id.* The owner's nonuse of a water right is some evidence of an intent to abandon the right and the longer the period of non-use, the greater the likelihood of abandonment. *Alpine III,* 983 F.2d at 1494 and n. 8; *Matter of Franktown Creek,* 77 Nev. 348, 364 P.2d 1069 (1961). The Tribe bears the burden of proving clear and convincing acts of abandonment and intent to abandon. *Town of Eureka,* 108 Nev. at 169, 826 P.2d 948.

The Tribe protested 55 out of the 56 parcels on grounds of abandonment. For 38 parcels, the Engineer found substantial peri-

ods of non beneficial-use of the water, ranging from 5 to 36 years.[10] Further, the Engineer's findings with regard to land use on a majority of these thirty-eight parcels demonstrate that, during the periods in which no water was applied to beneficial use, the parcel itself had been converted to a land use which was incompatible with irrigation, such as highways and roads, residential housing, and canals and drains. Neither the appellants nor the appellees contested these factual findings.

Despite these findings, the Engineer found that none of the transferors had abandoned his water rights on the fifty-five (55) parcels based on one or more of the following grounds: (1) no clear and convincing evidence of non-use for a lengthy period of time (i.e. more than 5 years)(17 parcels); (2) a water right holder could not have the intent to abandon something the individual did not know he owned until 1983, when the Supreme Court decided *Nevada v. U.S.* (General Finding of Fact IX)(all parcels); and (3) the transferor continued to pay the assessments and taxes due on the water rights and none were delinquent (all parcels).

On appeal, the Tribe and the United States contend that: (1) the Engineer may not take payment of assessments and taxes into consideration in determining intent to abandon; (2) the Engineer's General Finding of Fact IX is not supported by substantial evidence; and (3) the Engineer's uncontroverted findings of substantial period of nonuse of water, combined with a land use which is inconsistent with irrigation, is sufficient to find abandonment. The Tribe also contends that the Engineer erred when he declined to apply a rebuttable presumption of intent to abandon.

### A. *Rebuttable Presumption*

■ The Tribe contends that where there is a prolonged period of non-use, but no permanent improvement, the rebuttable presumption of intent to abandon applies, and the applicant should be required to come forward with evidence to explain and justify the non-use. The Tribe relies on authority from other western states to support its argument.

In Interim Ruling 4411, the Engineer rejected this argument and concluded that he "will not shift the burden to the transfer applicant to present evidence justifying the nonuse upon a mere showing by the [Tribe] of a substantial period of nonuse of a water right." The Engineer ruled that a "rebuttable presumption of abandonment is not Nevada law."

The court concludes the Engineer did not err in holding that a rebuttable presumption does not apply under Nevada law. *Alpine III*, 983 F.2d at 1493, n. 8. The Nevada Supreme Court has clearly stated that the owner's nonuse of a water right is *only some* evidence of an intent to abandon the right. *Matter of Franktown Creek*, 77 Nev. 348, 354, 364 P.2d 1069 (1961).

### B. *Payment of Assessments and Taxes*

■ The Engineer further found that for all of the applications at issue, the owners of the water rights had continually paid the assessments and taxes due and that none were delinquent. The Engineer combined this finding, with General Finding of Fact IX, to conclude that all of the water right owners lacked the intent to abandon their water rights.

The Tribe and the United States contend that the Engineer's reliance on the payments of assessments and taxes to show lack of intent to abandon is contrary to law and unsupported by the evidence. The appellants first argue that allowing the payment of the fees to preserve a water right in the face of nonuse is inconsistent with the usufructuary nature of water rights. The appellants further contend that the testimony does not support the Engineer's conclusions because all water right owners within the Project are assessed for each and every water-righted acre and payment is mandatory. The assessments are made without taking into consideration whether the landowner irrigates the

---

10. The 38 parcels are: Applications 47840 (Mills), parcels 1–20; 48468 (Fritz), parcels 1–6; 48668 (Gaylord), parcel 1; 48647 (Whitehead), parcel 1–2; 48672 (Lohse), parcel 2; 48666 (Craig), parcel 1–4; 48667 (Edson), parcel 7; 48467 (Gerdamann), parcel 1–2; and 48423 (Hoeksema), parcel 1.

land. If the taxes are delinquent, water is not delivered until the assessments are paid. Therefore, the appellants contend that the payment of assessments does not imply anything about the owner's intent to retain a right to irrigate all of his land.

However, abandonment is a question of fact to be "determined from all the surrounding circumstances." *Revert,* 95 Nev. at 786, 603 P.2d 262. Accordingly, the payment of assessments and taxes is a circumstance which the Engineer should take into consideration in determining intent.

### C. *General Finding of Fact IX*

 Next, the appellants contend that the Engineer's General Finding of Fact IX is not supported by substantial evidence. In that finding, the Engineer concluded that for the purpose of determining abandonment of water rights, a person could not have had the intent to abandon a water right which that person did not know he owned until the Supreme Court's decision in *Nevada v. U.S.,* 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983). The Engineer's conclusion is based on his finding that: (1) the Orr Ditch Decree only mentions a water right belonging to the United States; (2) the Special Master in the Orr Ditch litigation treated the United States' water right as if it were a type of implied federal reserved water right not subject to the rules of due diligence or the doctrines of forfeiture and abandonment; (3) the Alpine Decree confirms the right of the United States to divert and store the Carson River for distribution to the individual farmers; and (4) the issue of ownership in the Project was not completely resolved until the lower court's decision in *Alpine I,* 503 F.Supp. 877 and, the resulting appeal and decision in *Nevada v. U.S.,* 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 in 1983.

The court concludes that this finding is not supported by substantial evidence because it misconstrues the type of knowledge required, there is no factual support in the record for the conclusion and it is based on an erroneous legal premise.

 Abandonment is the *voluntary* relinquishment of a *known* right. *In Re Manse Spring,* 60 Nev. at 285, 108 P.2d 311. It is well-settled that "the concept of beneficial use is singularly the most important public policy underlying the water laws of Nevada and many of the western states. In fact, the principle of beneficial use is so well entrenched in our legal lexicon that the Nevada Legislature declared almost a century ago that 'beneficial use shall be the basis, the measure and the limit of the right to the use of water.' " *Desert Irrigation Ltd. v. State of Nevada,* 113 Nev. 1049, 1056, 944 P.2d 835 (1997); NRS § 533.035. "When we speak of the owner of a 'water right' we use the term in its accepted sense; that is to say that the owner of a water right does not acquire a property in the water as such, at least while flowing naturally, but a right gained to use water beneficially which will be regarded and protected as real property." *Application of Filippini,* 66 Nev. 17, 22, 202 P.2d 535 (1949). "Under the established tenet that a beneficial use is the measure and limit of a water right, when the necessity for the use of the water ceases to exist or is reduced, the extent of the water right is limited to the extent of the beneficial purpose which remains." *US v. Alpine Land,* 919 F.Supp. 1470, 1476 (D.Nev. 1996); NRS § 533.045. Thus, the nature of the water right is usufructuary. *W.A. Hutchins, 1 Water Rights Laws in the Nineteen Western States 440 (1974).*

Accordingly, the type of knowledge required is not one of legal ownership, but of a right to the *use* of the water. There is an absence of evidence in the record to indicate that the Project farmers did not know that the contract gave them the right to use the water beneficially on their own land.

Nor can that inference be drawn from the fact that, immediately subsequent to the decision in *Nevada v. U.S.,* the Project irrigators made applications to the Engineer to bring the records in compliance by correcting the places of use of their water rights to include actually irrigated acreage. At least two of the applicants allege that they were contacted by TCID to make the change applications. Indeed, it is alleged that TCID threatened to stop the flow of water until the applications were filed. No applicant testified or alleged that once he was aware of the

Supreme Court's decision, he immediately filed a transfer application with the Engineer. Thus, there is no factual evidence to support the Engineer's conclusion that none of the applicants could legally abandon their rights prior to the *Nevada v. U.S.* decision in 1983.

Further, as was stated in *Pyramid Lake Tribe v. Hodel,* the Engineer's argument that *Nevada v. U.S.* "changed the rules" is a "dubious proposition." 878 F.2d 1215, 1217, n. 2 (9th Cir.1989). Both the court in *Alpine I* and the Supreme Court in *Nevada v. U.S.* relied on holdings of *Ickes v. Fox,* 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525 (1937) and *Nebraska v. Wyoming,* 325 U.S. 589, 65 S.Ct. 1332, 89 L.Ed. 1815 (1945). In *Ickes,* the Supreme Court stated that "although the government diverted, stored and distributed the water, the ownership of the water or water rights did not vest in the United States. Appropriation was made not for the use of the government, but, under the Reclamation Act, for the use of the land owners." 325 U.S. at 597, 65 S.Ct. 1332. Thus, any property right of the government in the irrigation works is separate and distinct from the property right of the landowners in the water right itself. *Id.* Therefore, neither *Alpine I* nor *Nevada v. U.S.* changed the law in this regard. *Pyramid Lake,* 878 F.2d at 1217, n. 2.

Accordingly, the Engineer's General Finding of Fact IX is not supported by substantial evidence. It was error for the State Engineer to rely on this general conclusion to support a general and specific finding that all of the appellees lacked the intent to abandon their water rights.

D. *Evidence of Nonuse of Water and Improvements*

■ The appellants contend that where the Engineer's uncontroverted findings of fact include a prolonged period of nonuse of water on a parcel and an improvement that precludes irrigation, the water right was abandoned and, therefore, may not be transferred. While the court generally agrees

with this proposition, these findings must be considered in the context of this federal reclamation project.

The Project has always been controlled by the federal government or its agent, TCID. The evidence indicates that TCID was aware, and the government should have been aware, that for a number of years the farmers who had the right to irrigate their land pursuant to a water right contract were not always irrigating the particular land described in the contract. This fact was mostly due to the natural evolution and development of the farms over the century.

■ Traditional equitable principles govern whether the strict requirements of Nevada water law are to be relaxed. *Bailey v. State,* 95 Nev. 378, 383, 594 P.2d 734 (1979); *Alpine II,* 878 F.2d at 1229 (Judge Noonan, concurring). The court finds that intrafarm transfers within the Newlands Reclamation Project should be upheld as a matter of equity.[11]

There are several factors which support this conclusion. First, there is evidence in the record that the procedures to transfer water changed at least three times over the years. At one point, an applicant was told that transfers were not allowed. Further, when the farmers were finally told by TCID that they were required to file a transfer application, they complied. More importantly, the individual who was legally entitled to use the water continued to beneficially apply the water to his land, albeit in a different location than what might have been described in the contract, to the extent the location was described in the contract.[12] Finally, there is no evidence that any of the landowners making intrafarm transfers used more water than the amount granted by contract with the government. Accordingly, the Engineer did not err in concluding that the water rights subject to intrafarm transfers will not be deemed to have been forfeited or abandoned.

---

**11.** The United States does not protest the intrafarm transfers.

**12.** The contracts often did not describe the exact location of the water rights within any particular tract of land.

However, a transfer of a water right for value, from one property owner to another, who does not have any contractual right to Project water, does not warrant the same equitable considerations. As to these transfer applications, the legal principles of forfeiture and abandonment must apply.

In this conjunction, the Engineer erred in finding that payment of taxes, alone, was sufficient to establish the landowners lack of intent to abandon. Where there is evidence of *both* a substantial period of nonuse, combined with evidence of an improvement which is inconsistent with irrigation, the payment of taxes or assessments, alone, will not defeat a claim of abandonment. If, however, there is only evidence of nonuse, combined with the finding of a payment of taxes or assessments, the court concludes that the Tribe has failed to provide clear and convincing evidence of abandonment.

## V. CONCLUSION

Accordingly, based on the foregoing findings and conclusions:

1) The Engineer's disallowance of transfer, application 47840 (Mills), parcel 5, is affirmed.

2) Application 47840 (Mills), parcels 11 and 12, are remanded to the State Engineer for findings on the issue of perfection, based on the provision of a water right contract by either the applicant or TCID.

3) Application 48667 (Edson), parcel 1, is hereby remanded to the State Engineer for further findings on the issue of forfeiture and abandonment in accordance with this order.

4) The Engineer's findings as to Applications 47840 (Mills), parcel 21; 48828 (Inglis), parcel 1; 48672 (Lohse), parcel 1; 48673 (Payne), parcel 1; 48424 (Dalton), parcel 1; 48667 (Edson), parcels 2 & 5; 48825 (Emery), parcel 1; 48423 (Hoeksema), parcels 2 & 3; and 48865 (Rambling River), parcels 1–7 are affirmed.

5) All future transfer applications which concern an intrafarm transfer of a water right will not be subject to principles of forfeiture or abandonment.[13]

6) The following applications are remanded to the State Engineer on the issue of forfeiture to make a determination as to when the transferor or his predecessor took the "first step," independent of the 1902 priority date, to appropriate the water appurtenant to his land: 47840(Mills), parcels 1 & 13; 48468 (Fritz), parcels 1–3 & 6; 48668 (Gaylord), parcel 1; and 48647 (Whitehead), parcel 1. If there is any evidence that the individual landowner took any step to appropriate the water in accordance with the law in effect prior to March 22, 1913, the Engineer should apply the relation back doctrine and the water right will not be subject to forfeiture. If, however, the appropriation of the right was initiated subsequent to that date, the water right will be deemed forfeited. In the absence of any evidence of individual steps taken prior to March 22, 1913 to appropriate the water, the Engineer must use the date of the contract as the date the water right was initiated.

The Engineer is further ordered to make this determination for all pending transfer applications where: (1) the transfer of the water right was not an intrafarm transfer; (2) the water right is not a pre-project vested right; (3) the contract is not dated prior to March 22, 1913; or (4) there is clear and convincing evidence of nonuse for the statutory period.

7) The following applications are hereby remanded to the Engineer to take additional evidence which will bear on the transferor's intent to abandon: Applications 47840 (Mills), parcels 1–4, 6–10 and 13–20; 48468 (Fritz), parcels 1–6; 48668 (Gaylord), parcel 1; 48647 (Whitehead), parcel 1–2; 48672 (Lohse), parcel 2; 48666 (Craig), parcel 1–4; 48667 (Edson), parcel 7; 48467 (Gerdamann), parcel 1–2; and 48423 (Hoeksema), parcel 1. As previously indicated, additional evidence on the transferor's intent need only be of-

---

13. In support of his finding of non-forfeiture, the Engineer listed the fact that a transfer was within the same farm unit solely for Application 48865 (Rambling River), which was upheld on other grounds in this order. On remand, however, if there is evidence that any of the other thirteen applications are solely intrafarm transfers, the Engineer shall certify that finding to the court and the doctrines of forfeiture and abandonment will not apply.

fered by the applicant if there is both a finding of a substantial period of nonuse, combined with a finding of a land use inconsistent with irrigation. It is unclear from the record which of these thirty-eight parcels meets the criteria. If there is solely a finding of nonuse on any of these parcels, additional evidence need not be taken and the Engineer's findings of non-abandonment will be affirmed.

The type of evidence provided may include, but is not limited to, the fact that the transferor or his predecessor was told by the United States or TCID or any of its agents that he could not file a transfer application or that he could make an informal transfer with their approval. However, the evidence may not consist solely of the transferor's testimony that he did not have the requisite intent to abandon. Should the transferor fail to present additional evidence on the issue of intent, then the Tribe has met its burden of demonstrating by clear and convincing evidence abandonment of the water right appurtenant to the land.

The Engineer shall certify his findings to the court.

As to the transfers approved by this order, the United States shall not prohibit delivery of water to those transferee parcels.

It is so ORDERED.