**UNITED STATES of America,
Plaintiff,**

and

**Pyramid Lake Paiute Tribe
of Indians, Appellant,**

v.

**ALPINE LAND & RESERVOIR
COMPANY, a corporation;
et al., Defendant,**

and

**Nevada State Engineer; Rambling
River Ranches, Inc.,
Appellees.**

**United States of America,
Plaintiff–Appellee,**

v.

**Alpine Land & Reservoir Company, a
corporation; et al., Defendant,**

and

**Rambling River Ranches,
Inc., Appellee,**

**Larry Fritz; Gaylord Blue Equity
Trust, Applicants–Appellees.**

---

United States of America,
Plaintiff–Appellant,

Pyramid Lake Paiute Tribe of Indians,
Intervenor–Appellee,

v.

Alpine Land & Reservoir Company, a
corporation; et al., Defendant,

and

Rambling River Ranches,
Inc., Appellee,

Larry Fritz; Gaylord Blue Equity
Trust; Herbert Lohse,
Applicants–Appellees.

No. 00–15692.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 2001.

Filed Feb. 14, 2002.

Amended June 5, 2002.

Katherine J. Barton, United States Department of Justice, Washington, DC, for plaintiff-appellant United States of America.

Robert S. Pelcyger, Fredericks, Pelcyger & Hester, LLC, Louisville, CO, for appellant-cross-appellee Pyramid Lake Paiute Tribe of Indians.

Craig A. Pridgen, McQuaid, Metzler, Bedford & Van Zandt, LLP, San Francisco, CA, for appellee Herbert Lohse and cross-appellant-appellee Wayne Whitehead.

Steven D. King, Mackedon, McCormick & King, Fallon, NV, for applicants-appellees Larry Fritz and Gaylord Blue Equity Trust.

Laura A. Schroeder, Portland, OR, for appellee Rambling River Ranches, Inc.

Michael L. Wolz, Deputy Attorney General, Carson City, NV, for appellee Nevada State Engineer.

Before: HAWKINS and TASHIMA, Circuit Judges, and WILKEN, District Judge.*

## ORDER

The opinion filed on February 14, 2002, and reported at 279 F.3d 1189, is hereby amended by adding new footnote 22 at the end of the first sentence, second paragraph, of Part IV. CONCLUSION, slip op. at 2625, 279 F.3d at 1189, as follows:

22 This holding applies only to the extent that the equitable intrafarm exemption was used to find that no abandonment or forfeiture had occurred as to the parcels at issue in the underlying transfer applications. Accordingly, transfer applicant Rambling River is not affected by our remand order because its parcels were not covered by an intrafarm exemption. In Alpine IV, the district court affirmed the State Engineer's Ruling No. 4591 to the extent that it stated that there was no clear and convincing evidence of non-use on any specific portion of Rambling River's parcels. *Alpine IV*, 27 F.Supp.2d at 1238. Rambling River's parcels were not part of the district court's remand order and the State Engineer did not ad-

---

* The Honorable Claudia Wilken, United States District Judge for the Northern District of California, sitting by designation.

dress Rambling River in his Supplemental Ruling on Remand No. 4750, in which the intrafarm exemption was applied to the other parcels in question. The United States has also acknowledged that "the district court affirmed the State Engineer's approval of the Rambling Ranches [sic] transfer based not on a grant of equitable relief, but rather on the Engineer's factual findings that the water rights had not been abandoned or forfeited." Because the State Engineer made these specific findings, which have not been challenged, Rambling River's transfer applications are not subject to further proceedings on remand.

Except to the extent the mandate is clarified by the above amendment, the petition for panel rehearing of Rambling River Ranches, Inc., is denied. In its response to the petition for panel rehearing, Pyramid Lake Paiute Tribe of Indians raises issues of abandonment and forfeiture which were not raised in any of the principal briefs. We decline to consider them. The government suggests that the transfer applications involving parcels 1–5 of Rambling River were intrafarm transfers. The district court, however, upheld these transfers "on other grounds," in its order. See *Alpine IV*, 27 F.Supp.2d at 1245 n. 13. The mandate shall issue forthwith.

**OPINION**

TASHIMA, Circuit Judge:

In the mid–1980s, a number of landowners in the Newlands Reclamation Project (Project) in Nevada submitted applications to transfer water rights between different parcels of property. The Pyramid Lake Paiute Tribe of Indians (Tribe) protested the applications under the Nevada law of forfeiture and abandonment, arguing that the transfers would decrease the water flow into Pyramid Lake, which is situated on the Tribe's aboriginal homeland. The Nevada State Engineer (Engineer) initially granted the transfer applications and the Tribe, joined by the United States, appealed. On two separate occasions, the district court affirmed the Engineer's rulings and this Court reversed and remanded. After the most recent remand, the Engineer made a series of rulings on forfeiture and abandonment that related specifically to the transfer applications of appellees in this case. The Tribe and the United States again appealed. The district court reversed in part and the Engineer issued a supplemental ruling on remand, which largely granted the transfer applications. The district court affirmed and this appeal ensued. We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

**I. BACKGROUND**

**A. The Pyramid Lake Indian Reservation and Newlands Reclamation Project**

In 1859, the United States Secretary of the Interior (Secretary) set aside nearly half a million acres in western Nevada as a reservation for the Tribe. In 1874, President Ulysses S. Grant confirmed this withdrawal of acreage as the Pyramid Lake Indian Reservation (Reservation). The Reservation includes Pyramid Lake, which has been described as being "widely considered the most beautiful desert lake in North America . . . ." *Nevada v. United States*, 463 U.S. 110, 114, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (quoting S. Wheeler, *The Desert Lake* 90–92 (1967)). Pyramid Lake's sole source of water is the Truckee River.

Government actions subsequent to the establishment of the Reservation impinged upon the flow of Truckee River water to Pyramid Lake, precipitating the protract-

ed litigation giving rise to this case. The federal government passed the Reclamation Act of 1902 (Reclamation Act), 32 Stat. 388, codified at 43 U.S.C. §§ 371–600e, pursuant to which the Secretary withdrew approximately 232,800 acres in western Nevada from public use, which ultimately became the Project. The Project was designed to use the waters from both the Truckee and Carson Rivers to irrigate a substantial area in the vicinity of Fallon, Nevada, in order to facilitate its conversion to farmland. As a result of the diversion of water from the Truckee River for Project use, the surface area of Pyramid Lake has decreased over the years, threatening the survival of indigenous fish species.

## B. *Orr Ditch Decree*

In 1913, the United States brought a quiet title action to adjudicate water rights to the Truckee River for the benefit of the Reservation and the Project. The complaint named as defendants all water users on the Truckee River in Nevada, a number of whom had established rights to water in the Truckee River under Nevada law prior to the Project's implementation. After 31 years of hearings, negotiations, and periods of inaction, the district court entered a final decree pursuant to a settlement agreement on September 8, 1944. *United States v. Orr Ditch Co.*, Equity No. A–3 (D.Nev.1944) (*Orr Ditch Decree*). The *Orr Ditch Decree* awarded various rights to the Reservation and the Project, which by that time was under the management of the Truckee–Carson Irrigation District (TCID).[1]

The status of Truckee River water rights ostensibly determined under the *Orr Ditch Decree* was not resolved, howev-er, until the Supreme Court took up the issue in *Nevada v. United States, supra.* In 1973, the United States brought an action on behalf of the Reservation seeking additional rights to the waters of the Truckee River. In *Nevada*, the Supreme Court held that the United States and the Tribe were precluded on *res judicata* grounds from relitigating the water rights determination embodied in the *Orr Ditch Decree*. In addition, the Court rejected the government's ownership claim to the water rights allocated under the *Orr Ditch Decree*, holding that "[o]nce these lands were acquired by settlers in the Project, the Government's 'ownership' of the water rights was at most nominal; the beneficial interest in the rights confirmed to the Government resided in the owners of the land within the Project to which these water rights became appurtenant upon the application of Project water to the land." *Nevada*, 463 U.S. at 126, 103 S.Ct. 2906.

## C. *Alpine I*

During the long pendency of the *Orr Ditch* litigation, the United States initiated a separate quiet title action in 1925 to adjudicate the water rights of the Carson River in Nevada and California. In 1980, the district court rendered a final decision reviewing the proposed decree submitted by a Special Master, which came to be known as the *Alpine Decree*. *United States v. Alpine Land & Reservoir Co.*, 503 F.Supp. 877 (D.Nev.1980) (*Alpine Decree*), *aff'd. as modified*, 697 F.2d 851 (9th Cir.1983) (*Alpine I*). The *Alpine Decree* established the water duties[2] that particular types of properties were entitled to receive and structured a scheme for trans-

---

1. From 1927 to 1969, the Project was operated by the Truckee–Carson Irrigation District (TCID) under a delegation of authority from the United States.

2. "A water duty is the maximum amount of water that a property is entitled to receive from the Project, expressed in terms of acre feet per acre (afa)." *United States v. Alpine Land & Reservoir Co.*, 878 F.2d 1217, 1220 (9th Cir.1989) (*Alpine II*).

ferring all water rights within the Project. In its opinion, the district court stated that, under the relation back doctrine, the priority date of the Project water rights was July 2, 1902, a date to which the United States previously stipulated. *Alpine Decree*, 503 F.Supp. at 885. On this basis, the court held that a 1903 Nevada statute limiting the beneficial use of Project water rights did not apply. *Id.* at 885–86.

The United States, joined by the Tribe as *amicus*, appealed on a number of issues, including whether the district court had properly applied the relation back doctrine in exempting Project landowners from the 1903 statute. On this issue, we affirmed the district court, holding that the district court's decision regarding the application of the relation back doctrine was correct. *Alpine I*, 697 F.2d at 855. We also agreed with the district court that, under the Reclamation Act, Congress intended that all transfer applications for changing the location of water rights be governed by state law. *Id.* at 858.

### D. *Alpine II*

After *Nevada* and *Alpine I* were decided, numerous Project farmers filed applications with the Engineer to transfer water rights from land under valid water right contracts to land without such contracts.[3] The first case to come to the district court involved the Engineer's ap-

proval of 129 transfer applications. The Tribe protested the applications under the terms of the governing decrees and Nevada law, claiming that the transfers would decrease the water flow into Pyramid Lake.[4] With respect to 25 of the applications, the Tribe argued that the transferor landowners had abandoned, forfeited, or failed to perfect their rights under Nevada law. It is these 25 applications (subsequently reduced in number for a variety of reasons) that are the subject of this litigation.

In ruling on the 25 transfer applications, the Engineer concluded that the landowners had not forfeited or abandoned their water rights under Nevada law. Regarding forfeiture, the Engineer held that Nevada's forfeiture statute, Nev.Rev.Stat. § 533.060,[5] enacted in 1913, did not apply to the transferor properties, because their water rights had vested in 1902. The Engineer also held that mere non-use of the water, without substantial and conclusive evidence of intent to abandon, did not establish abandonment.

On appeal, the district court approved the Engineer's rulings on the ground that Nevada law did not apply. In particular, the district court noted that it was not until this Court's opinion in *Alpine I* "that it was definitively determined that transfers of places of use of water and the procedures to be followed were governed

---

**3.** In our description of the water rights regime, we noted that the initial rights of properties to receive Project water were based on contracts and certificates issued by either the Secretary or TCID. *Alpine II*, 878 F.2d at 1221. Most of the transfer applications at issue in the case dealt with properties that, at the time, were under irrigation without water rights secured by such contracts or certificates. *Id.*

**4.** The United States Department of the Interior, Bureau of Reclamation, intervened in this case as an unaligned party in interest. *See*

Nevada State Engineer, Ruling on Remand No. 4591, at 2 (Dec. 22, 1997).

**5.** Nev.Rev.Stat. § 533.060 was amended in 1999. The pre-amendment version, however, applies in this case. *See United States v. Orr Water Ditch Co.*, 256 F.3d 935, 938 n. 2 (9th Cir.2001). Therefore, in discussing § 533.060, all references to the statute will be to the pre–1999 version, which provided for forfeiture if a landowner "fail[ed] to use the water ... for beneficial purposes for any 5 successive years ...." *Id.* at 939 n. 3.

by the Nevada water law." *United States v. Alpine Land & Reservoir Co.,* 878 F.2d 1217, 1222 (9th Cir.1989) (*Alpine II*). As a result, the district court concluded, as a matter of equity, that Nevada law would not apply retroactively to Project water rights prior to *Alpine I. Id.*

This Court reversed. We first looked to the language of § 8 of the Reclamation Act, which provides that "[n]othing in this Act shall be construed as affecting or intended to affect or in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder...." 43 U.S.C. § 383. Applying this provision, we concluded that it was the Reclamation Act, not *Alpine I,* "that established that Nevada state law was governing ...." *Alpine II,* 878 F.2d at 1223.

We further determined that the district court erred by suggesting that it did nothing "more than approve transfers that already had been informally transferred with the permission of the United States or the TCID," because "[n]either of these parties has any power to transfer water rights, informally or otherwise, unless such transfers accord with Nevada law." *Id.* Finally, we stated that "the district court's assessment that Nevada law does not apply retroactively to govern the alleged forfeiture or abandonment of water rights 'informally transferred' before 1983 is hard to square with its original 1980 ruling affirming the *Alpine* Final Decree." *Id.* We remanded to the district court to "evaluate the merits of the Engineer's ruling that Nevada's statutory forfeiture provisions do not apply and his finding that under Nevada's common law of abandonment the transferor landowners have not indicated an intent to abandon their water rights." *Id.* at 1229.

### E. *Alpine III*

On remand, the district court upheld the Engineer's ruling that the use of water by Project landowners was sufficient to find the absence of intent to abandon the water rights appurtenant to the transferor properties. With respect to forfeiture, the district court concluded that the Engineer's determination that Nev.Rev.Stat. § 533.060 was inapplicable was "eminently correct" because the landowner's water rights vested in 1902. The Tribe appealed.

With respect to abandonment, we concluded that the Engineer had abused his discretion in finding that the Project landowners who made the original 25 transfer applications lacked the requisite intent to abandon their water rights. *United States v. Alpine Land & Reservoir Co.,* 983 F.2d 1487, 1494 (9th Cir.1993) (*Alpine III*). The Engineer's error was in relying on the mistaken belief that this Court had approved the informal transfer of water rights to properties without specific water rights contracts or certificates. *Id.* We noted that these informal transfers were repudiated in *Alpine II* and determined that "[t]he proper inquiry for the Engineer and the district court, therefore, is whether the individual transferor water rights were abandoned by the transferor property owners. Because the Engineer did not apply the correct law in determining intent, he has abused his discretion." *Id.*

With respect to the issue of forfeiture, we determined that the

district court erred by assuming that all the water rights in question vested when the United States obtained water rights for the Project in 1902. This amalgamation of water rights, obtained by the United States for the entire Project, is not the relevant set of rights. Instead, the rights at issue are the rights appurtenant to particular tracts of land that are the subject of the twenty-five contested transfer applications.

*Id.* at 1495 (footnote omitted). The case was remanded to the district court.

### F. Engineer Rulings Nos. 4411 and 4591

Pursuant to this Court's directive,[6] the district court remanded the remaining transfer applications from the original group of 25 to the Engineer to make findings on the issues of perfection, abandonment, and forfeiture. The Engineer issued Ruling on Remand No. 4591,[7] in which he made a series of findings of fact and conclusions of law that provide the basis for the present appeal. In General Finding of Fact I, the Engineer ruled that the burden of producing evidence of abandonment always resides with the protestant. Nevada State Engineer, Ruling on Remand No. 4591, at 12 (Dec. 22, 1997). The Engineer also found in General Finding of Fact IX that "a person could not have had the intent to abandon a water right they did not know they owned until the Supreme Court's 1983 decision in *Nevada v. U.S.*, since both the *Orr Ditch* and *Alpine* Courts had said that the United States, not the Project farmers, owned the water rights." *Id.* at 33. In General Finding of Fact X, the Engineer stated "that if the lands being stripped of water rights were simultaneously replaced by irrigated lands where swales were filled in or sand dunes were leveled within the irrigable area of the same farm unit or contract area then neither forfeiture nor abandonment applies." *Id.* at 34. Finally, in General Conclusion of Law IV, the Engineer concluded that, because the Project

water rights were initiated in 1902 when the United States took the first steps to appropriate water, they had a 1902 priority date exempting them from operation of the forfeiture statute. *Id.* at 46–49.

In addition to these rulings, the Engineer made parcel—specific water use findings that are now in dispute. With respect to the applications of appellees Larry Fritz (No. 48468) and Gaylord Blue Equity Trust (Blue) (No. 48668), the Engineer concluded that all water rights were initiated prior to 1913 and, therefore, the forfeiture provisions of § 533.060 did not apply. *Id.* at 79. With respect to Fritz's application, the Engineer further concluded that as to two parcels (parcels four and five), the contracts themselves indicated that the water rights vested prior to the Project's inception, rendering the forfeiture statute inapplicable. *Id.* at 79. Regarding abandonment, the Engineer stated that "[w]hile acts of abandonment appear as to use on a particular parcel of land, the protestant did not prove intent to abandon, particularly in light of the evidence that the water right holders continued to pay the assessments for the water and did not know they owned the water until 1983." *Id.* at 79–80. For these reasons, the Engineer affirmed the Fritz and Blue transfer applications. *Id.* at 80.

The Engineer then evaluated cross-appellant/appellee Wayne Whitehead's application (No. 48647). In his Conclusions of Law, the Engineer stated that, regarding forfeiture, all water rights were initiated prior to 1913 and therefore were exempt from the Nevada forfeiture statute.[8] *Id.*

6. In *Alpine III,* this Court left to the district court's discretion whether to conduct the factual determinations itself or to refer the matter to either the Engineer or a federal Water Master. *Alpine III,* 983 F.2d at 1497 n. 11.

7. Prior to issuing Ruling on Remand No. 4591, the Engineer issued Interim Ruling No. 4411, in which he concluded *inter alia* that Nevada law did not shift the burden of prov-

ing lack of abandonment to the applicants upon the protestant's showing of an extended period of non-use. Nevada State Engineer, Interim Ruling No. 4411, at 18–20 (Aug. 30, 1996).

8. Furthermore, the Engineer concluded that Whitehead's parcel one involved a pre-Project vested water right not subject to forfeiture.

at 91. With respect to abandonment, the Engineer concluded that the Tribe did not prove intent to abandon by clear and convincing evidence. *Id.* Therefore, Whitehead's transfer application was affirmed. *Id.*

In his analysis of appellee Herbert Lohse's application (No. 48672), the Engineer concluded that the Tribe "did not prove intent to abandon, particularly in light of the evidence that the water right holder continued to pay the assessment for the water and did not know he owned the water until 1983." *Id.* at 97. The Lohse transfer application was affirmed. *Id.* at 98.

With respect to the application of Rambling River Ranches, Inc. (Rambling River) (No. 48865), the Engineer again concluded, regarding forfeiture, that the water rights were initiated prior to 1913, exempting them from the forfeiture statute. *Id.* at 156. The Engineer further stated that the Tribe had failed to prove non-use for five consecutive years. *Id.* Finally, the Engineer concluded, based on the fact that water was being used within Rambling River's farm during the period in question, that the Tribe had not proven abandonment by clear and convincing evidence. Rambling River's transfer application was therefore affirmed. *Id.* at 156–57.

### G. *Alpine IV*

The United States and the Tribe appealed the Engineer's rulings on the transfer applications to the district court.[9] The district court reversed the Engineer on the forfeiture issue. Specifically, it held that "[u]nder the constraints of *Alpine III* (which this court is bound to apply), the Engineer's conclusions that all individual

Nevada State Engineer, Ruling on Remand No. 4591, at 91.

**9.** The Engineer's findings on 14 of the original 25 transfer applications were before the

landowners' rights were initiated in 1902 is erroneous. Accordingly, the Engineer should have made a determination as to when the individual landowner took the 'first steps' to appropriate the water appurtenant to his land, and not rely on the 1902 priority date." *United States v. Alpine Land & Reservoir Co.,* 27 F.Supp.2d 1230, 1241 (D.Nev.1998) (*Alpine IV*).

Concerning abandonment, the district court: (1) upheld the Engineer's holding that a rebuttable presumption does not arise under Nevada law based on a showing of prolonged non-use, *id.* at 1242; (2) agreed with the Engineer that a landowner's payment of assessments and taxes was a circumstance that should be taken into account in determining intent to abandon, *id.* at 1243; and (3) reversed the Engineer's General Finding of Fact IX, which found that the landowners could not have formed the requisite intent to abandon water rights given that they did not know they owned the rights until after 1983, *id.* at 1244.

The district court then turned to the issue of whether evidence of a prolonged period of non-use of water on a particular parcel combined with an improvement that precludes irrigation would demonstrate abandonment. While the district court generally agreed that such evidence would be sufficient to show abandonment, it stated that "these findings must be considered in the context of this federal reclamation project." *Id.* In conducting this analysis, the district court held "that intrafarm transfers within the Newlands Reclamation Project should be upheld as a matter of equity." *Id.*

district court. *See United States v. Alpine Land & Reservoir Co.,* 27 F.Supp.2d 1230, 1235 n. 1 (D.Nev.1998).

In addition to creating this intrafarm exemption, the district court also set forth a standard for evaluating evidence of abandonment. In particular, it held that "[w]here there is evidence of *both* a substantial period of nonuse, combined with evidence of an improvement which is inconsistent with irrigation, the payment of taxes and assessments, alone, will not defeat a claim of abandonment." *Id.* at 1245.

On the basis of this analysis, the district court: (1) affirmed the Engineer's findings regarding the Lohse (parcel one) and Rambling River applications; (2) held that all future transfer applications that concern an intrafarm transfer of a water right would not be subject to principles of forfeiture or abandonment; (3) remanded the Fritz, Blue, and Whitehead applications to the Engineer on the issue of forfeiture to make findings as to when the water rights were initiated; and (4) remanded the Fritz, Blue, Whitehead, and Lohse (parcel two) applications on the issue of abandonment. *Id.* at 1245.

## H. Supplemental Ruling on Remand No. 4750

On remand, the Engineer made parcel-specific findings on the outstanding transfer applications. With respect to the Fritz application, the Engineer found that water rights had been forfeited on parcel one; the transfers on parcels two, three, and six were intrafarm and thus exempt from forfeiture; and parcels four and five were pre-Project vested water rights, as well as intrafarm transfers, not subject to forfeiture. Nevada State Engineer, Supplemental Ruling on Remand No. 4750, at 17–18 (July 21, 1999). On the issue of abandonment, the Engineer found that the trans-

fers on parcels two through six were intrafarm and not subject to abandonment. *Id.* at 18. The Engineer therefore granted transfers from parcels two through six, and denied the transfer from parcel one. With respect to Blue's application, the Engineer granted the transfer based on the intrafarm exemption. *Id.* at 33.

Regarding Whitehead's application, the Engineer found that parcel one had been forfeited while parcel two had not been based on the original contract. *Id.* at 24. The Engineer found no intent to abandon parcel two water rights. *Id.* The Engineer also granted Lohse's application, rejecting the Tribe's claim of abandonment. In particular, the Engineer found that there was no proof of non-use as to parcel one and that parcel two involved an intrafarm transfer. *Id.* at 36.

On February 11, 2000, the district court issued its final judgment in which it concluded that the Engineer's rulings were supported by substantial evidence and were not contrary to law.[10] The United States, the Tribe, and cross-appellant Whitehead filed timely appeals.[11]

## II. STANDARD OF REVIEW

■ The *Alpine Decree*, in accordance with Nevada law, establishes that "[t]he decision of the State Engineer shall be prima facie correct, and the burden of proof shall be upon the party challenging the Engineer's decision." *Alpine Decree*, Administrative Provisions § 7; *see also* Nev.Rev.Stat. § 533.450(9). A reviewing court will uphold the Engineer's factual findings if supported by substantial evidence and his legal conclusions so long as they are not contrary to law. *See United States v. Alpine Land & Reservoir Co.,*

---

**10.** In its order, the district court misidentifies some of the applications with respect to which the Engineer made rulings on the intrafarm transfer issue. This appears to be an error in drafting and we assume that the district court intended to affirm the Engineer's ruling it is entirety.

**11.** These appeals were consolidated for hearing.

919 F.Supp. 1470, 1474 (D.Nev.1996); *see also Pyramid Lake Paiute Tribe of Indians v. Washoe County*, 112 Nev. 743, 918 P.2d 697, 702 (1996).

### III. ANALYSIS

#### A. Application of Orr Water Ditch

At the outset, it is important to clarify what remains at issue in this appeal in light of our recent opinion in *United States v. Orr Water Ditch Co.*, 256 F.3d 935 (9th Cir.2001) (*Orr Water Ditch*). In their briefs, the parties made three main arguments. First, they argued that the district court improperly evaluated different evidentiary factors in determining abandonment. Second, they asked this Court to reconsider our ruling in *Alpine III* regarding the priority date for water rights under the state forfeiture statute. Finally, they contended that the district court erred in exempting intrafarm transfers from state forfeiture and abandonment law. After briefing was completed, this Court decided *Orr Water Ditch*, which directly disposed of the first two issues on appeal.[12]

First, with respect to the evidentiary issues related to abandonment, the United States and the Tribe argued that the district court erred in affirming the Engineer's determination that a prolonged period of non-use of water rights does not create a rebuttable presumption that a landowner intended to abandon those rights. *See Alpine IV*, 27 F.Supp.2d at 1242. We rejected this argument in *Orr Water Ditch*, holding that, although a prolonged period of non-use may raise an inference of intent to abandon, it does not create a rebuttable presumption. 256 F.3d at 945. The Tribe further argued that the district court erred in holding that a landowner's payment of Project operation and maintenance assessments is evidence of a lack of intent to abandon. Again, this issue is controlled by *Orr Water Ditch*, in which we concluded that "abandonment is to be determined 'from all the surrounding circumstances,' and those circumstances certainly include the payment of assessments and taxes." *Id.* at 946.[13] Finally, cross-appellant/appellee Whitehead took issue with the district court on a related point, claiming that it erred in holding that "[w]here there is evidence of *both* a substantial period of nonuse, combined with evidence of an improvement which is inconsistent with irrigation, the payment of taxes or assessments, alone, will not defeat a claim of abandonment." *Alpine IV*, 27 F.Supp.2d at 1245. As a formulation of the law, we explicitly endorsed this statement of the abandonment rules in *Orr Water Ditch*, 256 F.3d at 946; therefore, Whitehead's challenge must be rejected. Accordingly, based on *Orr Water Ditch*,

12. Appellees Fritz and Blue, after almost two decades of litigation, object to these entire proceedings on the ground that the Engineer lacked jurisdiction to hear challenges to water rights in an administrative transfer application hearing. As *Alpine II* clearly established that the Engineer properly considered issues of abandonment and forfeiture in the transfer application proceedings, this argument lacks merit.

13. With respect to the Tribe's argument regarding the sufficiency of the evidence on abandonment, the record does not support its suggestion that the Engineer improperly relied on evidence of payment of assessments to negate the intent to abandon of specific transfer applicants. In fact, in Supplemental Ruling on Remand No. 4750, the Engineer only relied on evidence of continued payments in granting appellee Whitehead's application. In so doing, the Engineer looked to the payments only as one factor among others bearing on Whitehead's intent. Specifically, the Engineer referred both to the payment of assessments and the fact that the landowner had taken affirmative steps to transfer the property during the 1970s as evidence of a lack of intent to abandon. *See Nevada State Engineer*, Supplemental Ruling on Remand No. 4750, at 23–24.

we affirm the district court's rulings regarding the appropriate evidentiary criteria for determining abandonment.

Second, regarding the priority date question, cross-appellant/appellee Whitehead, joined by appellees Engineer, Fritz, Blue, and Rambling River, asked this Court to reconsider our ruling in *Alpine III* to the extent it held that 1902 was not the relevant priority date for determining the application of the Nevada forfeiture statute.[14] *Orr Water Ditch* reaffirmed our holding in *Alpine III* that landowners cannot claim 1902 as the date their water rights were initiated, but rather had to demonstrate that they took "affirmative steps" to appropriate water prior to 1913 to be exempted from the state forfeiture statute. In light of *Orr Water Ditch*, we reject the request to reconsider *Alpine III*

and uphold the district court to the extent it affirmed the Engineer's parcel-specific application of the state forfeiture statute.[15] Therefore, given that our decision in *Orr Water Ditch* has disposed of two of the three main issues raised by the parties, we turn our attention to addressing the outstanding issue on this appeal—whether the district court's broad application of an intrafarm exemption constituted reversible error.

## B. Equitable Relief for Intrafarm Transfers

 The United States and the Tribe both contend that the district court erred in exempting intrafarm transfers of water rights from the operation of Nevada's forfeiture and abandonment laws based on equitable considerations.[16] *See Alpine IV,*

**14.** In connection with his Combined Opening and Responsive Brief, Whitehead filed a petition for initial *en banc* consideration of the forfeiture holding in *Alpine III*. Because two separate panels of this Court have held that the relevant date for determining the application of Nev.Rev.Stat. § 533.060 is not 1902, but rather the date that individual acts of water right appropriation were initiated, *see Orr Water Ditch*, 256 F.3d at 943; *Alpine III*, 983 F.2d at 1496, we deny Whitehead's petition. A petition for rehearing *en banc* on the identical issue has already been rejected in *Alpine III*. *See Orr Water Ditch*, 256 F.3d at 944. Moreover, this issue does not meet the Ninth Circuit's criteria for rehearing *en banc*—its resolution is not necessary to secure uniformity of decisions or to decide a question of exceptional importance. *See United States v. Burdeau*, 180 F.3d 1091, 1092 (9th Cir.1999) (Tashima, J., concurring). To the contrary, the only opinions addressing this issue uniformly hold that 1902 is not the relevant initiation date for forfeiture purposes. Although the water rights issues presented are clearly significant, this court has already held that they were not exceptional enough to warrant *en banc* review.

**15.** We also reject Rambling River's motion to certify the priority date question to the Nevada Supreme Court. This motion is yet another collateral attack on *Alpine III's* forfeiture

holding, which has been decided, affirmed as modified upon petition for rehearing, and affirmed again in *Orr Water Ditch*. Further, this Court has already considered and rejected the certification of this issue in connection with *Alpine III*. *See Alpine III*, 983 F.2d at 1491 n. 3. There is no compelling reason to revisit that decision. Moreover, certification of this issue is not warranted because it does not involve an undecided issue of state law that may be determinative of the present dispute. *See Rubin v. State Farm Mut. Auto. Ins. Co.*, 222 F.3d 750, 753 (9th Cir.2000). This Court in *Alpine III* and *Orr Water Ditch* has already made clear that the priority date of water rights is not the same as the initiation date for determining the application of the forfeiture statute. Therefore, for the Nevada Supreme Court to rule on the priority date for Project water rights would do absolutely nothing to clarify the application of Nev.Rev.Stat. § 533.060 to the water rights at issue here.

**16.** Appellee Lohse suggests that the United States has waived all of its arguments against intrafarm transfers, given that it never protested the transfers below. *See Alpine IV*, 27 F.Supp.2d at 1244 n. 11 ("The United States does not protest the intrafarm transfers."). It is true that in the district court the United States represented that it had no objections to the intrafarm transfers and thus may have

27 F.Supp.2d at 1244. The district court held that all transfers of water rights from their existing place of use to a proposed place of use within the same farm unit were protected, under principles of equity, from compliance with the strict requirements of Nevada law. *Id.* In making this determination, the district court emphasized the fact that the Project "has always been controlled by the federal government or its agent, TCID" and that the "evidence indicates that TCID was aware, and the government should have been aware, that for a number of years the farmers who had the right to irrigate their land pursuant to a water right contract were not always irrigating the particular land described in the contract." *Id.* Noting that traditional equitable principles govern the application of Nevada law to the transfer requests, *see Id.* (citing *Alpine II*, 878 F.2d at 1229 (Noonan, J., concurring)), the district court identified intrafarm transfers as deserving equitable protection.

As part of its analysis, the district court identified the following factors supporting its decision:

> First, there is evidence in the record that the procedures to transfer water changed at least three times over the years. At one point, an applicant was told that transfers were not allowed. Further, when the farmers were finally told by TCID that they were required to file a transfer application, they complied. More importantly, the individual who was legally entitled to use the water continued to beneficially apply the water to his land, albeit in a different location than what might have been described in the contract, to the extent the location was described in the contract. Finally, there is no evidence that any of the landowners making intrafarm transfers used more water than the amount granted by contract with the government. Accordingly, the Engineer did not err in concluding that the water rights subject to intrafarm transfers will not be deemed to have been forfeited or abandoned.

*Id.* (footnote omitted).

Appellants first argue that the district court's application of equity to exempt intrafarm transfers is foreclosed by *Alpine II*. In *Alpine II*, we rejected the district court's conclusion that it would be inequitable to apply the Nevada law of forfeiture and abandonment retroactively to water rights "informally transferred" prior to the 1983 decisions in *Alpine I* and *Nevada*, which established that state law governed transfer proceedings. *See Alpine II*, 878 F.2d at 1222–24. We therefore disagreed with the district court's reasoning that, because the government had acquiesced to informal transfers under which landowners used Project water without the contractual rights to do so, it could not find subsequent to 1983 that those rights had been abandoned or forfeited by the original holders. In doing so, we specifically held that exempting pre–1983 rights would completely undermine the *Alpine Decree*, which would be rendered inapplicable to all "informal transfers" made before 1983. *Id.* at 1222–23. We also concluded that, since § 8 of the Reclamation Act explicitly provided that state law governed water rights issues, the government could not have approved informal transfers had it wanted to. *Id.* at 1223. Thus, those landowners who informally transferred water

---

waived the issue. *See Long v. Dir., OWCP*, 767 F.2d 1578, 1583 (9th Cir.1985) (stating that a party who failed to object at hearing below cannot raise challenge for the first time on appeal). The Tribe, however, did not acquiesce to the intrafarm transfers and, therefore, has preserved the issue for appeal. Because the United States' and the Tribe's arguments largely coincide, we will continue to refer to them collectively as "appellants."

rights prior to 1983 "did so at their own risk." *Id.* Finally, we stated that the district court's ruling that Nevada law did not apply to pre–1983 informal transfers was inconsistent with the district court's prior ruling in the *Alpine Decree* that the Nevada law of forfeiture applied to the United States' failure to make transfer applications in the late 1800s and early 1900s. *Id.* at 1223–24.

■ Appellants contend that the district court erred in granting equitable relief to intrafarm transfers premised on the same assumption that we rejected in *Alpine II*— namely, that the government and TCID had either explicitly or tacitly approved these transfers prior to the landowners' submission of formal transfer applications. Appellees attempt to distinguish *Alpine II*, arguing that it dealt only with the transfer of water rights from legitimate right holders to applicants without any contractual

or other rights to water. *See id.* at 1228 (stating that the court's analysis "was premised on the contractual rights of the farmers to receive Project water in some amount, rights the appellees simply do not have").[17] Appellees argue that the situation here is different, since, unlike the transfer applicants discussed in *Alpine II*, intrafarm applicants have the contractual right to use water and have applied the water to beneficial use, albeit in a location different from the original place of use.[18] This distinction, however, does not withstand scrutiny. It is clear that *Alpine II* dealt with all the applications at issue here, so the suggestion that it should be deemed controlling only with respect to transfers for value is unavailing.

Appellees' main argument is that the district court's decision was a reasonable one in light of fact that the intrafarm applicants are merely applying water that

---

17. *See also* footnote 3, supra.

18. The parties make much of this issue of location. For instance, the Engineer contends that the location of the applicants' water rights cannot be segmented and compartmentalized into specific geographic confines within the legal description contained in their contracts. Fritz and Blue make a similar argument, claiming that the water rights contracts do not identify a specific place of use within a particular property, so it is false to suggest that there was ever a particular water righted area from which a landowner could transfer rights to a different location. Under this view, because the place of use is appurtenant to the entire area designated in an individual water right contract, there was never any need to file a transfer application. Fritz and Blue claim that they were essentially tricked into filing by the United States, which sought to use the transfer proceedings as part of a thinly veiled scheme to reallocate water rights to Pyramid Lake to protect it against adverse environmental impacts.

Appellees' arguments regarding location are misplaced. It is clear that under both federal and state law, a water right is appurtenant to the land irrigated. *See* 43 U.S.C.

§ 372; Nev.Rev.Stat. § 533.040. Therefore, as a matter of law, it is correct to say that the water rights in question attached to the specific parcel to which water was beneficially applied, rather than the entire property under contract.

Fritz and Blue's allegations of a government scheme to defraud simply lack merit. There is no question that the United States has a fiduciary duty to ensure that the Truckee River water is used only to serve valid existing rights and to permit all other river water to flow to Pyramid Lake. The government's intervention in the transfer application proceedings here appears consistent with this obligation.

We also reject a related contention by Fritz and Blue that the Engineer improperly used existing maps in determining the location of the water rights at issue. The record shows that the Engineer, after a careful analysis of the quality and character of the maps in question, acted reasonably in determining that they constituted the most accurate evidence of water right location, and that they were necessary to resolve the disputes regarding whether specific rights had been forfeited or abandoned. See Nevada State Engineer, Ruling on Remand No. 4591, at 20–25.

they validly own to new places of use on the same farm due to the fact that historically irrigated existing places of use have ceased to be suitable for agriculture. In addition, they stress that the application of forfeiture or abandonment would work an injustice under the circumstances of this case, since until 1983 the applicants did not know they owned the water rights and there were no legal means for them to move water within their farms because of a government-imposed moratorium on transfers. Further, they claim that equity is proper here because the United States knew, or should have known, about the existence of these intrafarm transfers before the applications were made.

These are precisely the arguments, however, that this Court rejected in *Alpine II*. If the transfer applicants moved water within their farm without complying with state transfer requirements, they did so "at their own risk" under *Alpine II*, since the Reclamation Act made it clear that state law applied to these actions. Thus, *Alpine II* forecloses the argument that the landowners did not know that they possessed ownership rights subject to the transfer requirements. The fact that the United States knew, or should have known, that these transfers had taken place is irrelevant under *Alpine II*, which specifically held that such "informal transfers" were not exempt from Nevada law under equitable principles. As this Court noted, since the United States never had the authority under the Reclamation Act to approve such transfers, the fact that they occurred has no bearing on whether state law principles of forfeiture and abandonment should now be applied. To hold otherwise would exempt all informal intrafarm transfers from the strictures of the *Alpine Decree*—an outcome that *Alpine II*

specifically rejected. *See Alpine II,* 878 F.2d at 1222–23.

The argument that the government-imposed moratorium on transfers supports the blanket application of an equitable exemption from forfeiture or abandonment is also misplaced.[19] This is because many of the parcels at issue in the transfer applications—including parcels two and four in the Fritz application, parcel one in the Blue application, parcels one and two of the Whitehead application, and parcel two of the Lohse application—do not involve periods of non-use that coincide with the moratorium period. Therefore, equity should not be used to justify a generalized equitable exemption divorced from the facts of each particular case.

Although, under this analysis, a blanket equitable exemption of intrafarm transfers is contrary to *Alpine II*, equitable relief might be appropriate on a case-by-case basis to prevent individual transfer applicants from losing their water rights. Thus, as appellees argue, equity might be appropriate to limit the harsh consequences of Nevada law where the circumstances justify protecting individual landowners from unjust outcomes. *See Town of Eureka v. Office of State Eng'r,* 108 Nev. 163, 826 P.2d 948, 951–52 (1992) (holding it appropriate to waive application of a forfeiture statute where the holder of water rights resumed use after the statutory period of non-use), *Bailey v. State,* 95 Nev. 378, 594 P.2d 734, 737–39 (1979) (concluding that an underground water permittee who had not timely filed proof of beneficial use was entitled to equitable relief from cancellation of water rights where she had continuously worked on land during the period in question).

Appellants respond that equity is unnecessary here, since the factors that the dis-

---

19. According to the United States, the moratorium in question arose out of the Operating Criteria and Procedures Decree, under which TCID was eventually prohibited from approving transfer applications. The moratorium apparently lasted from 1973 to 1984.

trict court discussed in supporting its decision actually are more appropriately used to analyze whether landowners meet the state law requirements for forfeiture or abandonment. In particular, in explaining its decision to invoke equity, the district court emphasized that the applicants had attempted to comply with the transfer procedures, continuously applied their water rights to beneficial use (albeit in a different location), and did not use more water than authorized. *Alpine IV,* 27 F.Supp.2d at 1244. These factors, the United States argues, are relevant to determining whether the landowners forfeited or abandoned their water rights as a matter of law.

We agree with appellants that, with respect to abandonment, rather than supporting equitable relief, the factors noted by the district court more appropriately bear on whether the landowners formed the requisite intent to abandon their rights. If the landowners attempted to transfer rights prior to filing their applications in this case and were thwarted by the government or TCID, that would most likely demonstrate their lack of intent to abandon. Appellants' argument, however, does not work with respect to forfeiture. This is because, under the forfeiture statute in operation at the time this case was filed, there was no intent requirement. *See Nev.Rev.Stat.* § 533.060; *see also In re Manse Spring,* 60 Nev. 280, 108 P.2d 311, 315 (1940). Therefore, the fact that a landowner might have been prevented from filing a transfer application would do nothing to alter a finding of non-use for the statutory period. In addition, a showing that the water was applied beneficially elsewhere on the property would be unavailing, since *Alpine II* requires compliance with state law. To completely remove the possibility of equitable relief for

those landowners who would otherwise technically forfeit their properties through non-use, but who made efforts to comply with the transfer requirements during the moratorium period, would be inconsistent with equitable principles. Given that the law abhors a forfeiture, *see Town of Eureka,* 826 P.2d at 952, equity should operate in these limited situations to protect landowners.

■ We therefore reverse the district court's order to the extent that it provided blanket equitable relief for intrafarm transfers without requiring an individualized factual showing with respect to each transfer applicant. Specifically, we conclude that the district court erred in granting equitable relief to those landowners facing abandonment because the landowners may demonstrate that they did not abandon their water rights as a matter of law. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n,* 98 Nev. 275, 646 P.2d 549, 551 (1982) (per curiam) (holding that the district court lacked authority to grant equitable relief, since there was an adequate remedy at law). On remand, the district court is instructed to make factual findings, or to remand to the Engineer to do so,[20] in order to determine whether each individual landowner had the requisite intent to abandon in light of the factors noted in the district court's opinion. At a minimum, proof of continuous use of the water right should be required to support a finding of lack of intent to abandon. In addition, each landowner should be required to present evidence that he or she attempted unsuccessfully to file for a change in place of use, or at least inquired about the possibility of a transfer and was told by the government or TCID that such a transfer was not permitted.

---

**20.** *See Alpine III,* 983 F.2d at 1497 n. 11 ("We again leave to the district court's discretion the decision of the appropriate fact finder.").

With respect to forfeiture, we reverse the district court's application of a blanket equitable exemption. Unlike with abandonment, however, we conclude that equity may be appropriate on a case-by-case basis in the forfeiture context if a landowner can show that steps were taken to transfer water rights during the period of non-use, but that those steps were thwarted by the government or TCID.[21]

## IV. CONCLUSION

Based on our decision in *Orr Water Ditch*, we affirm the evidentiary standard that the district court applied in making its parcel-specific rulings on abandonment. Following *Orr Water Ditch*, we also affirm the district court's determination that 1902 was not the relevant priority date for determining the application of Nevada's forfeiture statute.

We reverse the district court's general equitable exemption of intrafarm transfers from the state law of forfeiture and abandonment.[22] Although we conclude that equity is inappropriate in the abandonment context, where individual landowners may demonstrate that they lacked the requisite intent to abandon as a matter of law, equi-

ty may be appropriate in the forfeiture context, if the landowners can show on a case-by-case basis that they were prevented from complying with transfer requirements.

The judgment of the district court is therefore

**AFFIRMED IN PART, REVERSED IN PART and REMANDED.** Each party shall bear its or his own costs on appeal.

---

**21.** The Tribe argues that any equitable determination by the district court must balance the hardships to the Tribe, something the court did not do in its previous decision. We agree that, on remand, in making its equitable determinations, the district court should balance the negative consequences to the Tribe resulting from any increased diversions.

**22.** This holding applies only to the extent that the equitable intrafarm exemption was used to find that no abandonment or forfeiture had occurred as to the parcels at issue in the underlying transfer applications. Accordingly, transfer applicant Rambling River is not affected by our remand order because its parcels were not covered by an intrafarm exemption. In *Alpine IV*, the district court affirmed the State Engineer's Ruling No. 4591 to the extent that it stated that there was no clear

and convincing evidence of non-use on any specific portion of Rambling River's parcels. *Alpine IV*, 27 F.Supp.2d at 1238. Rambling River's parcels were not part of the district court's remand order and the State Engineer did not address Rambling River in his Supplemental Ruling on Remand No. 4750, in which the intrafarm exemption was applied to the other parcels in question. The United States has also acknowledged that "the district court affirmed the State Engineer's approval of the Rambling Ranches [sic] transfer based *not* on a grant of equitable relief, but rather on the Engineer's factual findings that the water rights had not been abandoned or forfeited." Because the State Engineer made these specific findings, which have not been challenged, Rambling River's transfer applications are not subject to further proceedings on remand.