**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                              *Plaintiff,*

and

PYRAMID LAKE PAIUTE TRIBE OF
INDIANS,
                    *Petitioner-Appellant,*

v.

TRUCKEE-CARSON IRRIGATION
DISTRICT; CITY OF FALLON; CITY OF
FERNLEY,
                *Defendants-Appellees,*

NEVADA STATE ENGINEERS,
                    *Respondent-Appellee.*

No. 04-16032

D.C. Nos.
CV-73-00003-LDG
EQUITY A-3

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellant,*

and

PYRAMID LAKE PAIUTE TRIBE OF
INDIANS,
                              *Petitioner,*

v.

CITY OF FERNLEY,
                    *Defendant-Appellee,*

NEVADA STATE ENGINEERS,
                    *Respondent-Appellee.*

No. 04-16033

D.C. Nos.
CV-73-00003-LDG
EQUITY A-3

OPINION

15467

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, District Judge, Presiding

Argued and Submitted
July 7, 2005—San Francisco, California

Filed November 21, 2005

Before: Mary M. Schroeder, Chief Judge,
Michael Daly Hawkins and William A. Fletcher,
Circuit Judges.

Opinion by Judge William A. Fletcher

**COUNSEL**

Katherine J. Barton, Fred R. Disheroon, James B. Cooney, U.S. Department of Justice, Washington, D.C.; Stephen M. MacFarlane, U.S. Department of Justice, Sacramento, California, for plaintiff-appellant United States of America.

Robert S. Pelcyger, Fredericks Pelcyger Hester & White, Louisville, Colorado, for petitioner-appellant Pyramid Lake Paiute Tribe of Indians.

Michael J. Van Zandt, McQuaid Bedford & Van Zandt, San Francisco, California, for defendant-appellee Truckee-Carson Irrigation District.

Steve King, Mackedon & McCormick, Fallon, Nevada, for defendant-appellee City of Fallon.

Paul G. Taggart, King & Taggart, Carson City, Nevada, for defendant-appellee City of Fernley.

Michael L. Wolz, Office of the Nevada Attorney General, Carson City, Nevada, for respondent-appellee Nevada State Engineers.

## OPINION

W. FLETCHER, Circuit Judge:

This appeal arises from efforts by the Pyramid Lake Paiute Tribe of Indians to apply some of its Truckee River water rights, as established under a 1944 federal court decree, to instream use rather than irrigation. The district court held that the Tribe was entitled to change the use of the water rights, but was not entitled to apply the transportation loss portion of the rights. We affirm.

## I. Background

The Truckee River originates in California, flows into Nevada, and terminates in Pyramid Lake. The lake is the principal natural feature of the Pyramid Lake Reservation. Acting under authority granted to it by the Reclamation Act of 1902, 32 Stat. § 388, the federal government initiated the Newlands Reclamation Project to divert water for irrigation from the Truckee and Carson Rivers. Because private landowners and the Indians of the Pyramid Lake Indian Reservation held preexisting water rights, the United States brought suit in federal district court in 1913 to quiet title to all water rights in the project area. More than thirty years later, the federal district court in Nevada entered a final decree adjudicating water rights in the Truckee Division of the project. *United States v. Orr Water Ditch Co.*, Equity No. A-3 (D. Nev. 1944). Known as the *Orr Ditch* Decree, it allows owners of water rights to change the "place, means, manner or purpose of use of the waters to which [the owner is] so entitled," as long as they do so "in the manner provided by law."

The Pyramid Lake Paiute Tribe of Indians and the United States, as trustee for the Tribe, sought in 2001 to make temporary changes to two water rights provided by the decree, Claim Nos. 1 and 2. They sought to change the use of water formerly used for irrigation of Indian lands so that it would

flow unimpeded into Pyramid Lake, where it would help preserve the Tribe's fishery. Following the procedures specified in the *Orr Ditch* Decree, the Tribe and the United States applied to the Nevada State Engineer for an initial adjudication. On December 6, 2002, the Engineer issued a ruling granting the applications in part. The Engineer allowed the Tribe to transfer the majority of the acre-feet it had requested to fishery use (approximately 85 percent of its request under Claim No. 1, and approximately 73 percent of its request under Claim No. 2), but did not allow the Tribe to transfer the remaining portion of the claims. These remaining portions were transportation losses which, in the view of the Engineer, could not be transferred to a use that did not entail such losses.

In January 2003, the City of Fallon and the Truckee-Carson Irrigation District appealed the State Engineer's ruling to federal district court. In their appeal, the City of Fallon and the Irrigation District invoked Nev. Rev. Stat. § 533.450(5), which allows a party to obtain an automatic stay of the State Engineer's ruling on a change application upon timely request and the posting of a bond. The district court issued the requested stay. The United States and the Tribe appealed, objecting that the Federal Rules of Civil Procedure, rather than the Nevada water law statute, should apply. We affirmed, holding that the stay procedure was an inseparable part of the Nevada water code and was thus applicable to proceedings under the decree. *United States v. Orr Water Ditch Co.*, 391 F.3d 1077 (9th Cir. 2004), *amended by* 400 F.3d 1117 (9th Cir. 2005).

On March 9, 2004, the district court decided the merits of the underlying appeal from the State Engineer's ruling. *See United States v. Orr Water Ditch Co.*, 309 F. Supp. 2d 1245 (D. Nev. 2004). The district court largely affirmed the Engineer, upholding his decision that the Tribe is entitled to transfer its water rights under Claim Nos. 1 and 2 from irrigation to in-stream use in furtherance of its fishery in Pyramid Lake.

Parties on both sides appealed. This court dismissed the appeal of the Irrigation District pursuant to a stipulation of the parties. All that remains is the appeal by the Tribe and the United States.

## II.   Mootness

**[1]** The period encompassed by the temporary transfer in this case ended in November 2004, but the question at issue in this appeal will almost certainly arise again. As we noted in *Orr Water Ditch*, 391 F.3d at 1080, the United States and the Tribe are "repeat players" who have stated that they intend to file virtually identical temporary transfer applications in the future. Temporary transfer applications may involve changes in water use that are of brief duration such that the period will inevitably expire before any appeal can be heard. Thus, for reasons similar to those stated in our previous opinion, this case falls into the exception to mootness for cases " 'capable of repetition, yet evading review.' " *See id.* at 1080-81 (quoting *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911)).

## III.   Standard of Review

In proceedings under the *Orr Ditch* Decree, we review the State Engineer's factual determinations to see if they are "supported by substantial evidence." *United States v. Alpine Land & Reservoir Co.*, 291 F.3d 1062, 1071 (9th Cir. 2001). We uphold the State Engineer's legal conclusions as long as they are not contrary to law. *Id.* Although we consider the State Engineer's interpretations of Nevada statutes "persuasive," they are not controlling. *United States v. Orr Water Ditch Co.*, 256 F.3d 935, 945 (9th Cir. 2001). We review *de novo* the district court's conclusions of law. *Id.*

## IV.   Discussion

**[2]** The only question squarely presented in this appeal is whether the Tribe may transfer the transportation-loss compo-

nent of its decreed water rights under Claim Nos. 1 and 2. Under the *Orr Ditch* Decree, the Tribe is entitled under Claim No. 1 to a maximum of 14,742 acre-feet of water per year to irrigate 3,130 acres of Reservation bottom lands. It is entitled under Claim No. 2 to a maximum of "one-fortieth of one cubic foot per second." This equals a maximum of 15,344.55 acre-feet of water per year to irrigate 2,745 acres of Reservation bench lands. *Orr Water Ditch*, 309 F. Supp. 2d at 1247. These maximum figures include an estimated amount of water that will be lost in the process of transporting the water from the river to the irrigated land.

The Decree specifically provides as to Claim No. 1 that its allocations are based on "an estimated transportation loss of fifteen percent." It further provides that the maximum amount of "water . . . *diverted* shall not exceed 4.71 acre feet per year for the aggregate number of acres . . . irrigated," while "the amount of water *applied to the land* shall not exceed four acre feet per year for the aggregate number of acres . . . irrigated." (Emphasis added.) The Decree provides as to Claim No. 2 that the maximum amount to be "diverted" from the river is 5.59 acre-feet per acre per year, and the maximum amount to be "applied to the lands," after taking into account transportation loss, is 4.1 acre-feet per acre per year.

**[3]** The Decree's "general provisions" similarly state that the maximum total allocation of water, described above, is based upon an estimate of transportation loss. It explains that the allocation may be modified depending on actual transportation loss:

> If it shall appear at any time in regard to the actual use and need of water for irrigation that the amount hereinbefore estimated and allowed to be diverted from the river or stream into any ditch or canal is not sufficient after transportation loss to deliver to the land the flow allowed by this decree for application to the land, the allowance or flow as fixed by this

decree for application to the land shall control, and
there may, and hereby is allowed to be diverted from
the stream a larger amount than the amount herein-
before estimated for diversion from the stream, to
the extent necessary to supply to the land, after
actual transportation loss, the flow of water allowed
by this decree for application to the land. Whether
more or less than the amount hereinbefore estimated
for diversion from the stream by any ditch, the quan-
tity of water diverted for irrigation shall in every
case be only such an amount as will supply to the
land, after actual transportation loss, the amount of
water allowed by this decree for application to the
land and the quantity needed for irrigation thereof.

Thus, the constant maximum amount established by the
Decree is the "amount of water allocated by this decree for
application to the land." In addition to this amount, the Decree
accounts for transportation loss by allowing an additional
"amount . . . estimated for diversion," such that the water
applied to the land remains constant after taking into account
transportation loss. This additional amount may be adjusted
up or down based on actual conditions.

The estimates for transportation loss in the *Orr Ditch*
Decree are based on the assumption that the water will be
used for irrigation. Water rights holders under the Decree are
not, however, restricted to that use. Instead, they are permitted
to change the use of their water rights, subject to the require-
ment that the change is accomplished "without injury to the
rights of other persons whose rights are fixed by this decree."[1]
Under the Decree, the baseline for the determination of injury

[1]The district court held that irrigation and in-stream uses were both "pri-
mary purposes." It did not reach the question of whether the Tribe was
entitled to transfer its use from irrigation not merely to another "primary
purpose" but to "any lawful purpose." 309 F. Supp. 2d at 1253. We also
do not reach that question.

to junior appropriators is the conditions that existed at the time of their initial appropriation. Notwithstanding this right, however, the Tribe is entitled to use the total amount to which it is entitled under the Decree, regardless of whether it has historically put the water to beneficial use. *See United States v. Adair*, 723 F.2d 1394, 1406 n.11 (9th Cir. 1983) (declaring that "reserved water rights are established by reference to the purpose of the reservation rather than any actual beneficial use of water").

In this case, the Tribe applied to transfer temporarily the place and manner of use of 9,941 acre feet per year of Claim No. 1 and the entirety of Claim No. 2 (15,344.55 acre feet per year) from irrigation to in-stream fishery use. The State Engineer allowed the transfer of 8,420 acre-feet for Claim No. 1, and 11,254.5 acre-feet for Claim No. 2. These figures represent the amount of water the decree allows for actual application to the land. They exclude the amount allocated to transportation loss.

Both the State Engineer and the district court refer to the portion of the water right actually delivered to the land as the "water duty." *Compare United States v. Alpine Land & Reservoir Co.*, 697 F.2d 851, 854 (9th Cir. 1983). In holding that the Tribe is entitled to transfer only the "water duty" component of its *Orr Ditch* rights to an in-stream fishery use, the State Engineer did not resolve the issue of whether the Tribe's water rights under the *Orr Ditch* Decree included the water allocated to transportation loss. Instead, the Engineer relied on the Decree's "no injury" provision, finding that there would be a "potential of impact to storage and consequently injury to other water right holders"[2] if the transportation loss amount

---

[2]Appellants dispute this finding. Appellants acknowledge that, in general, the "no injury" rule would preclude the transfer of transportation losses to other uses because it would reduce the return flows to the Truckee River. However, in this case, they argue, there are no downstream users from the place of diversion of the Tribe's water right who would receive return flows from the Tribe's use of water for irrigation. Because we do not decide the case on this ground, we need not resolve this issue.

were to be included, and that, because the transfer application was for one year only, the Tribe would not be harmed by temporarily denying it the transportation loss amount. The State Engineer noted that this ruling was "not prejudicial to consideration of the issue on future applications."

The district court affirmed the State Engineer's ruling on a different ground. The court noted that the Decree's General Provisions provide that the amount allocated to transportation loss is only an "estimated" one, which can be increased or decreased as conditions demand. The court thus reasoned that under the Decree the Tribe is entitled not to the total amount of water it is entitled to divert, but only to the maximum amount of water it is permitted to apply to the land. *Orr Water Ditch*, 309 F. Supp. 2d at 1256.

Appellants argue that the Tribe is entitled to the transportation loss water based on the language in Claim No. 1 providing that, for irrigation of the Pyramid Lake reservation, the United States is "entitled and allowed to divert . . . an amount not exceeding 14,742 acre feet of water in any calendar year." They also base their argument on similar language in Claim No. 2 providing that the United States "is hereby and will be allowed to divert water . . . to the amount of one-fortieth of one cubic foot per second." This language, they argue, creates an unqualified entitlement to divert water up to the overall maximum. As discussed above, however, this entitlement is modified by the requirement that the amount applied to the land not exceed four acre-feet per acre for Claim No. 1 and 4.1 acre-feet per acre for Claim No. 2.

**[4]** We disagree with Appellants (and agree with the district court). The specific provisions of Claim Nos. 1 and 2 set forth maximums both for water that may be diverted and for water that may be applied to the land. The General Provisions cited above further clarify that the maximum diversion allowances are merely "estimated," and that if they are either overly generous or insufficient in light of actual transportation losses, "the allowance or flow as fixed by this decree for application to the land shall control." Thus, under the Decree, if the Tribe

incurs a smaller transportation loss than the decree's estimates allow, the Tribe does not gain the right to apply the unused portion of the transportation loss to the land. Conversely, if transportation losses are greater than the Decree's estimates, the Tribe is not required to reduce the amount of water it applies to the land; instead, it may increase the amount of water it diverts. That is, the amount of water to which the Tribe is entitled for transportation loss fluctuates depending on real-world conditions, while the amount of water the Tribe may use to apply to the land remains constant.

**[5]** The Tribe's transportation loss right is thus inseparable from the actual conditions of irrigation. In consequence, if we were to agree with the Tribe that it is entitled to transfer to in-stream use the water allocated to transportation loss for irrigation, we would have to direct the State Engineer to make a year-by-year assessment of how much water, under current weather and soil conditions, would actually be lost if the Tribe used its water right to irrigate its lands rather than to support its fishery. Such a rule would be difficult to administer and would create considerable uncertainty. Moreover, because such a rule would require the State Engineer to apply beneficial use principles in estimating the amount of water that would reasonably be lost from year to year, it would also be in tension with our general approach to the Tribe's water rights under the Decree, under which we do not subject the Tribe's rights to any beneficial use requirement. We think it unlikely that such a result is contemplated by the *Orr Ditch* Decree.

In part because the transportation loss amount changes from year to year, the Water Master responsible for administering the Decree has taken the position that the transportation loss component is not transferrable. Before the State Engineer, the Water Master testified that, in his judgment, the water available to the Tribe for transfer was "the duty as allocated, the water times the number of acres, so it would be the amount of water that's actually decreed for use and I do not

believe that the loss in the various canals would be subject to transfer." The Water Master based this opinion on the variability of the transportation loss "from ditch to ditch based on the length of the ditch, et cetera," and his understanding that in the past "the State Engineer . . . when they've made transfers has [not] allowed for the loss." The Water Master thus also construed the Decree as limiting the Tribe's entitlement to the amount of water decreed for application to the land, supplemented by transportation losses only to the degree that such losses are actually incurred.

**[6]** This understanding is also supported by explicit provisions in the *Alpine Land* Decree, an adjudication of water rights in the Carson River portion of the Newlands Project. *See United States v. Alpine Land & Reservoir Co.*, 503 F. Supp. 877 (D. Nev. 1980), *modified by* 697 F.2d 851 (9th Cir. 1983). Because the *Alpine Land* and the *Orr Ditch* decrees concern the same reclamation project, we have often used interpretations of one to construe the other. *See*, *e.g., Orr Water Ditch*, 391 F.3d at 1081; *United States v. Alpine Land & Reservoir Co.*, 341 F.3d 1172, 1180 (9th Cir. 2002). We find it significant that the Administrative Provisions of the *Alpine Land* Decree explicitly exclude transportation loss amounts from the water right that may be transferred, providing that "[c]hange of manner of use applications from use for irrigation to any other use and changes in place of use applications shall be allowed only for the *net consumptive use* of the water right as determined by this decree." (Emphasis added.)

**[7]** At oral argument, Appellants contended that the absence of such an explicit provision in the *Orr Ditch* Decree could be construed to suggest that change applications under that Decree are *not* similarly limited to consumptive use. However, because the *Orr Ditch* Decree clearly limits the water right to the amount allocated for consumptive use plus *actual* transportation loss, Appellants' interpretation is implausible. Instead, we think it more likely that the *Alpine*

*Land* Decree simply makes explicit what the *Orr Ditch* Decree assumes — that the transportation loss component of the right becomes irrelevant when water is transferred to a use that does not involve transportation loss. We note that a Supreme Court decree adjudicating water rights in western states has also taken this approach. *See Arizona v. California*, 439 U.S. 419, 422 (1979) (decree establishing priority of use of Colorado River water providing that if water was used for non-consumptive purposes, the amount used could not "exceed the consumptive use that would have resulted" if the water had been used for irrigation). By contrast, Appellants have not pointed to any cases or decrees clearly allowing transfer of transportation loss allocations to uses that do not incur any actual transportation loss.

Appellants' final argument is that the rules for adjusting transportation loss in the General Provisions of the Decree are intended only to restate the "no injury" rule as it applies to junior appropriators, whose rights are limited by the amount of water that is put to beneficial use. A junior appropriator who wishes to transfer an irrigation right may only transfer the portion of her right that, historically, she has beneficially used, including only the amount actually incurred in transportation loss. If she uses less than the total granted to her under the Decree, she cannot increase her use to the total without being found to have injured other users. Appellants argue that the Tribe, by contrast, is not a junior appropriator and is not subject to the beneficial use requirement; therefore, this portion of the Decree does not apply to it.

The terms of the General Provisions contain none of the limitations Appellants seek to read into them. The transportation loss provision is not limited to junior appropriators. Instead, the provision states that "in *every* case" the maximum quantity of water to be used is limited to "the amount of water allowed by this decree for application to the land." (Emphasis added). It is true, as Appellants argue, that this part of the Decree speaks in terms of irrigation use and does not specifi-

cally provide that the same standards will apply to non-irrigation use. But the General Provisions must be read together with the language of Claim Nos. 1 and 2, which limit the amount of water the Tribe may apply to the land regardless of the amount of transportation loss. There is nothing in the Decree to suggest that the Tribe's water rights are greater when water is used for a purpose other than irrigation.

This case does not present the question of whether, if a non-irrigation use results in losses analogous to transportation losses for irrigation, the Tribe should be permitted to divert additional water to account for such losses. The record does not indicate whether an in-stream use such as fishery would result in any losses at all. The Water Master did not rule out the possibility that in-stream use might result in some loss, although he did note that the amount of loss would be "difficult to determine." The district court found based on the record before it that "as the transfer applications establish the Tribe will be applying the water to the proposed use starting at the point of diversion, no actual transportation losses can occur." *Orr Water Ditch*, 309 F. Supp. 2d at 1257. However, if the Tribe can demonstrate in future proceedings that such losses occur for in-stream fishery use, it should be permitted to argue that it is entitled to divert additional water such that the amount actually applied to in-stream fishery use is the same as the amount of water the Tribe is permitted to apply to irrigated acreage pursuant to the Decree.

## Conclusion

[8] We hold that the district court correctly concluded, under the terms of the *Orr Ditch* Decree, that if a new use entails no transportation loss, the water allocated to transportation loss for irrigation use may not be transferred to that new use. We do not decide other questions raised by Appellants.

AFFIRMED.